RAMIREZ, J.
 

 Edward Brigham, Sandra Forbes Beran, Dana Forbes, Robin Forbes and Allen Forbes appeal the trial court’s final judgment entered in favor of the defendants, Dana and Patricia Brigham, and others. We reverse, concluding that the trial court erred in ruling that the trustee did nothing wrong in transferring the multi-million dollar Brigham Tree Farms Property to himself.
 

 I. Factual Background
 

 EFP Brigham died in 1982, leaving his widow, Marion, as the sole owner of his estate valued at the time of his death at approximately $3 million. EFP and Marion had four children: Edward Brigham, Dana Brigham (married to Patricia), Toby Brigham and Jerre Brigham Forbes.
 

 Jerre died in 1996, leaving four children, appellants Allen Forbes, Robin Forbes, Dana Forbes and Sandra Forbes Beran. Appellant Peter Forbes was Jerre’s husband and the father of the four Forbes children.
 

 On June 15, 2002, at the age of 98, Marion died. EFP’s estate contained real estate in North Carolina known as the “Brigham Tree Farms Property.” Brigham Tree Farms was an operating tree farm business consisting of 800 acres of forest land in western North Carolina.
 

 Two trusts were created for Marion pri- or to 1990: one on May 21, 1984, and the second on April 11, 1985. In each of those trusts, the assets were to be divided among Marion’s four children. These trusts were funded with Marion’s real estate interests. On July 13, 1990, Marion
 
 *377
 
 executed the new Revocable Trust of Marion W. Brigham (the “1990 Revocable Trust”). Marion and Dana were co-trustees of the 1990 Revocable Trust, and Patricia was the successor trustee. The 1990 Revocable Trust, like each prior trust, divided Marion’s estate into four separate but equal shares for each of Marion’s children and their heirs.
 

 The fourth trust, called the EFP Land Trust, was presented to Marion for her execution on September 28, 1991. The assets of the EFP Land Trust included numerous parcels of land in Florida and North Carolina, including the Brigham Tree Farms Property. Dana made himself the sole Trustee of the EFP Land Trust. The beneficiary of the EFP Land Trust was the 1990 Revocable Trust. Marion executed this document as Trustee of the 1990 Revocable Trust. Paragraph 8 of the EFP Land Trust states, as all of the land trusts did, that:
 

 “[t]he interests of the beneficiary shall consist solely of the following rights respecting the Trust property:
 

 a. The right to direct the Trustee to convey or otherwise deal with the title to the Trust property as hereafter set out.
 

 b. The right to provide direction to the Trustee as to the management and control of the Trust property.
 

 c. The right to receive the proceeds and avails from the rental, sale, mortgage or other disposition of the Trust property.
 

 The foregoing shall be deemed personal property and may be assigned and/or otherwise transferred as such
 

 [[Image here]]
 

 Paragraph 3 of the EFP Land Trust also controls how the beneficiary’s interests can be assigned and/or transferred. It states that “the interest of a benefieiary(ies) may be assigned or transferred only if the consent of persons holding in excess of fifty percent (50%) of all such interests is first obtained and the provisions of paragraph 18 hereof are adhered to.” Paragraph 18 requires that any interest of the beneficiaries be transferred by written assignment signed by the beneficiary and delivered to the trustee. Paragraph 18 also provides that the failure to comply with the required formalities voids any such attempted transfer. Paragraph 11 of the EFP Land Trust states that the Trust may be amended, extended, revoked or terminated only by written agreement signed by the trustee and the beneficiaries.
 

 On February 2, 1994, Marion executed the First Amendment to the 1990 Revocable Trust (the “First Amendment”), which stated that no provision had been made for her son, Toby, because Toby received advancements of her estate equal to his share, specifically the eminent domain practice of EFP’s law firm.
 

 On August 22, 1994, Marion executed a plethora of documents, including a third trust (“the 1994 Revocable Trust”). The language of this new trust did not purport to supersede or amend the 1990 Revocable Trust. It was devoid of any such language. Marion and Dana Brigham were made co-trustees of the 1994 Revocable Trust, and Patricia was the successor trustee. The beneficiaries of the residuary of the 1994 Revocable Trust were Edward Brigham, Dana Brigham and Jerre Brigham Forbes, equally.
 

 Additionally, on August 22, 1994, six properties held by the EFP Land Trust were transferred to separate “Illinois Land Trusts,” one for each separate parcel of land. Dana Brigham was Trustee of each of the land trusts. The land trusts that were formed were known as the Cloud Valley Land Trust, the Seven Mile Ridge Land Trust No. 1, the Blue Rock Land
 
 *378
 
 Trust No. 1, the Halls Chapel Land Trust No. 1, the Rice Road Land Trust No. 1, and the Coxes/Jacks Creek Land Trust No. 1.
 

 With the exception of the Cloud Valley Land Trust, Marion signed each of the trust agreements with the beneficiary being the 1994 Revocable Trust. The Cloud Valley Land Trust was created on the same day as each of the other land trusts. However, unlike the other land trusts, Marion did not execute the Cloud Valley Land Trust, or execute the deed conveying her interest in the property to the trust, or sign a written assignment of her interest in the EFP Land Trust. Instead, Dana Brigham, as Trustee of the EFP Land Trust, signed the Cloud Valley Land Trust and the deed conveying the Brigham Tree Farms Property from the EFP Land Trust (of which the 1990 Revocable Trust, and therefore Jerre, Edward and Dana were equal beneficiaries) to the Cloud Valley Land Trust, of which Dana was the 100% and sole beneficiary. The only asset of the Cloud Valley Land Trust was the 688 acres of the Brigham Tree Farms Property as three acres were not transferred and remained in the EFP Land Trust until Dana, as Trustee, sold these acres in 2001.
 

 As a result of this purported transfer, the Brigham Tree Farms Property was no longer an asset of the EFP Land Trust, or Marion’s estate. Dana Brigham, as Trustee, had transferred the Brigham Tree Farms Property to himself without court approval or a writing or assignment executed by Marion. Dana Brigham had the property appraised at $550,000 in 1994, and sold the property for $2.4 million in 2001.
 

 II. Proceedings in the Trial Court
 

 On June 11, 2003, appellants filed a complaint against Dana and Patricia Brigham. The complaint consists of eleven counts: (1) Undue Influence; (2) Breach of Fiduciary Duty; (3) Self Dealing; (4) Conversion of Trust Assets; (5) Mismanagement of Trust Assets; (6) Intentional Interference; (7) Constructive Trust; (8) Fraud; (9) Conspiracy; (10) Removal of Defendants as Trustees and Surcharge; and (11) Accounting. In November 2004, appellants filed a Motion to Restrict Payment of Attorneys’ Fees, arguing that appellees were prohibited from paying their individual attorneys’ fees with trust funds and without prior court approval. The trial court found that the appellees were prohibited from paying their individual attorneys’ fees with trust funds, concluding that court approval was necessary to pay litigation expenses out of the trust, as a personal conflict may exist since appellees were sued in their individual capacities as well as in their trustee roles. After the appointment of a special master who agreed with the trial court, Dana and Patricia appealed. This Court upheld the trial court’s decision in
 
 Brigham v. Brigham,
 
 934 So.2d 544 (Fla. 3d DCA 2006), concluding that Dana and Patricia had violated section 737.403, Florida Statutes (2003), by paying their attorneys fees from trust assets without receiving prior court approval.
 

 Appellants moved for partial summary judgment on numerous counts, including that the Brigham Tree Farms Property transfer must be voided as a matter of law. Appellees filed their own Motion for Summary Judgment based in part on the statute of limitations and certain trust provisions. The trial court appointed Senior Judge Herbert Stettin to hear and decide both parties’ summary judgment motions, as well as to conduct the trial on the appellants’ claims. Prior to the scheduled trial date, Judge Stettin denied both motions for summary judgment.
 

 Judge Stettin then held a non-jury trial. The appellees argued that even though
 
 *379
 
 Marion allegedly gifted the Brigham Tree Farms Property to Dana Brigham on the same day, it was Marion’s intent according to paragraph “H” of article VII, “Disposition of Trust Estate Upon the Death of Settlor” of the 1994 Revocable Trust, to give Dana Brigham the entire Brigham Tree Farms Property allegedly denoted in the 1994 Revocable Trust as “Cloud Valley.” Appellants countered that “Cloud Valley” was not a legal description of any property, but as it was used in the 1994 Revocable Trust, it only described three acres located where the main house was located within the Brigham Tree Farms Property. The Brigham Tree Farms Property was not part of Marion’s Estate at the time of her death as it was sold in 2001 to William Moody by Dana Brigham, individually and as Trustee of the EFP Land Trust.
 

 It was undisputed that Dana Brigham deeded the Brigham Tree Farms Property, as Trustee of the EFP Land Trust, to himself as Trustee of the Cloud Valley Trust. It was further undisputed that, when Dana Brigham, individually, sold the Brigham Tree Farms Property in 2001, including the three acres described above, he had to deed the three acres to the purchasers as the Trustee of the EFP Land Trust.
 

 III. Evidence at Trial
 

 The evidence at trial indicated that after EFP’s death, Dana Brigham, with Patricia’s assistance, began acting as Marion’s lawyer, trustee, and trusted investment and business advisor. Dana and Patricia assumed control of all of Marion’s finances, taxes and investments. Marion made no money from these investments and lost hundreds of thousands of dollars. Dana was the personal representative for EFP’s estate and served as Marion’s attorney and trusted advisor for many years. He was the Trustee or Co-Trustee of all of Marion’s numerous Trusts. He was the personal representative of Marion’s Estate. Marion used Dana’s firm, Brigham & Brigham, for her legal needs. Patricia, Marion’s daughter-in-law, was employed by Marion, performed paralegal work for her, was Marion’s bookkeeper, managed Marion’s bank accounts, prepared financial statements of Marion’s assets, income, and expenses, wrote Marion’s checks, was Marion’s de facto trustee and performed other tasks that placed her in a confidential relationship with Marion.
 

 The trial court recognized that Dana and Patricia received significant gifts and assets from Marion for their own personal use, investment and purposes. The trial court also referred to several releases signed by Marion where she allegedly forgave these acts.
 

 On December 29, 1994, Marion allegedly transferred twenty-four percent (24%) of the EFP Land Trust to Dana, consisting in part of the remaining three acres of the Brigham Tree Farms Property. Unlike the purported transfer of the 688 acres of the Brigham Tree Farms Property to Dana, there is a written assignment of interest regarding these three acres that complied with the express provisions of the EFP Land Trust. Marion expressly executed an assignment on that date transferring twenty-four percent (24%) of the EFP Land Trust to Dana. However, Dana did not obtain prior court approval for this transfer.
 

 Dana, as Trustee of the various North Carolina land trusts, sold the parcels of North Carolina land held in these trusts. Marion did not provide Dana with written authority to sell these properties as required by the 1994 Revocable Trust and the individual land trusts. Dana was required by the express terms of the various land trusts to deposit the proceeds of these sales into the 1994 Revocable Trust bank
 
 *380
 
 account. There was no written instruction to make these transfers of assets out of the Trust, as was required under the language of article III of the 1994 Revocable Trust. Instead, Dana deposited the proceeds from these sales into a joint account owned by Dana and Marion. Dana then used Marion’s funds to make gifts and payments to himself and Patricia without prior court approval or any written authority from Marion.
 

 For example, Dana signed numerous checks to himself using the proceeds of the sale of Marion’s property in the various trusts, without any written authority from Marion or prior court approval. Marion continued to pay the real estate taxes and other expenses of the Brigham Tree Farms Property, even after its alleged transfer to Dana on August 22, 1994. These payments, which total $200,000, were allegedly oral gifts or transfers to Dana and/or Patricia but they were not supported by a writing signed by Marion and/or without prior court approval. Only one gift observed any formalities — a $10,000 gift to Dana and Patricia evidenced by a writing signed by Marion.
 

 In June 1996, Marion allegedly executed a deed in which she transferred the “Webb property” in North Carolina to Patricia for no consideration. There was no prior court approval and no duly executed instruction to the trustee of the Revocable Trust which would be necessary to transfer the property. Patricia contended that the Webb Property was worth only approximately $16,800 on the date of the transfer to her in December 1994, but she sold it on or about March 5, 2004, for approximately $125,977.22.
 

 Patricia paid herself a salary for eleven years, from 1990 until Dana sold Cloud Valley in 2001, out of Marion and/or the Trust’s assets, without a document from Marion subsequent to 1988 acknowledging her confirmation of the salary or a gift of that salary. Patricia was paid approximately $300,000 over these eleven years in either gifts or salary for her part-time work (amounting to around six hours per month). Following the sale of the Brigham Tree Farms Property in 2001, Patricia and Dana fraudulently deducted $48,000 as a charitable donation on their individual tax return for 2001 for donating Marion’s admitted personal belongings to a church. Furthermore, Dana improperly paid for his personal legal fees from the trust funds subsequent to Marion’s death.
 
 See Brigham,
 
 934 So.2d at 544.
 

 Robert Freeman, a lawyer identified by Dana as Marion’s lawyer, testified that he never met or spoke to Marion prior to August 22, 2004, the day that she came into his office to sign the documents supplied by Dana. Freeman testified that no one represented Marion at the meeting, no one explained the trust documents to Marion and no one explained or confirmed the fact that Marion was allegedly making an oral gift of the Brigham Tree Farms Property.
 

 Dana Brigham never informed his brothers, sister, nephews or nieces of the alleged gift of the Brigham Tree Farms Property to him by Marion. Dana concealed the transfer in his March 19, 1997 letter to his brother Toby, where as Marion’s lawyer, Dana offered Toby the right of first refusal in the purchase of the North Carolina properties. Dana never informed Toby that Marion no longer owned the Brigham Tree Farms Property. In addition, Dana and Marion both signed the letter to Toby, which stated that Dana was acting as Marion’s lawyer in selling the property.
 

 Evidently in anticipation of a legal challenge to their self-dealing, Dana and Patricia brought Marion to the offices of Dr. Fernando Mata, a psychiatrist, to submit
 
 *381
 
 Marion to a competency examination in 1997. Dr. Mata stated in his report that Marion informed him, almost three years after Dana’s transfer of the Brigham Tree Farms Property to himself, that she owned 800 acres of land in North Carolina that was part of her Estate. According to Dr. Mata’s report, Marion also told him that it was her belief that her estate was divided equally between her children and made no mention of any oral gift of property to Dana three years earlier.
 

 In July 2007, the trial court entered its Final Judgment, finding that the transfer of the Brigham Tree Farms Property and the other assets to appellees was not the result of Marion’s incompetence, undue influence or fraud on the part of the appel-lees. The court dismissed the appellants’ breach of fiduciary duty claims because appellants failed to show undue influence by a preponderance of the evidence that the trial court stated was required in order to sustain the breach of fiduciary duty claim. The court ruled that there was more credible evidence on the record to support the finding that Marion intended to gift the Brigham Tree Farms Property to appellees as part of her estate planning. The court also determined that appellants were unable to prove that appellees tor-tiously interfered with appellants’ rights in the Brigham Tree Farms Property. It held that all of the appellants’ causes of action, except for fraud and tortious interference, were time barred because they occurred more than four years prior to the filing of the suit and were not tolled by the appellants’ lack of knowledge or the appel-lees’ actions to conceal the transactions.
 

 Finally, the trial court concluded that court approval of Dana’s conflicted transfer of Brigham Tree Farms Property, from a trust in which he was not a beneficiary to a trust in which he was the sole beneficiary and sole trustee, was not necessary and that the transfer did not violate Florida law despite the existence of a clear conflict of interest because the trial court did not have jurisdiction. The court made no ruling with regard to the application of the unambiguous terms of the trust documents which required that Dana receive a writing signed by Marion prior to transferring the Brigham Tree Farms Property out of the EFP Land Trust and the 1990 Revocable Trust.
 

 IV. Analysis
 

 Dana Brigham did not obtain prior court approval when he, as Trustee, transferred 688 acres of the Brigham Tree Farms Property to Dana individually, as Trustee of a new trust where he was the sole beneficiary. As a matter of law, the trial court should have voided this transfer and required Dana and Patricia to return the proceeds to the EFP Land Trust for distribution pursuant to that trust document. The clear intent of section 737.403(2), Florida Statutes (2003), is to prevent this type of conflicted transaction. In addition, the trial court should have voided this transfer because it violated the clear and unambiguous terms of the applicable trusts which required a “writing” and/or “assignment” signed by the beneficiary and/or the grant- or of the trusts, which was Marion. Finally, the trial court failed to set aside numerous other trustee payments, “gifts,” and other conflicted transfers made by Dana Brigham to himself and his wife Patricia. These actions were all breaches of appel-lees’ fiduciary duties.
 

 The trial court’s failure to apply and/or the misinterpretation of several trust statutes are matters of law subject to de novo review. In addition, the standard of review is also de novo when reviewing the trial court’s interpretation and application of Florida law.
 
 See Gordon v. Regier,
 
 839 So.2d 715, 718 (Fla. 2d DCA 2003);
 
 Gilliam v. Smart,
 
 809 So.2d 905, 907 (Fla. 1st
 
 *382
 
 DCA 2002). Likewise, the interpretation of several unambiguous trust provisions is also subject to de novo review.
 
 See Miller v. Kase,
 
 789 So.2d 1095 (Fla. 4th DCA 2001).
 

 a. The Transfer of the Brigham Tree Farms Property by Dana as Trustee to himself individually was void, pursuant to section 737.403(2).
 

 With respect to appellants’ first issue on appeal, we conclude that the trial court erred in not voiding Dana’s transfer of the Brigham Tree Farms Property. The appellants first allege that pursuant to section 737.403(2), Florida Statutes, the trial court was compelled to void the conflicted transfer of the Brigham Tree Farms Property by Dana as Trustee to himself, individually. The appellants are correct that as Trustee, Dana was required to obtain court approval prior to transferring the Brigham Tree Farms Property to himself.
 

 The trial court found that:
 

 [I]it is not disputed that as trustee, Dana, conveyed the Cloud Valley (Brigham Tree Farms) from a trust in which he was not a beneficiary to a trust in which he is the sole beneficiary. This transfer to Dana would be a conflict of interest if court approval (pursuant to 737.403(2) Fla. Stat.) were required.
 

 It is undisputed that Dana, as Trustee, transferred and made a gift of the Brigham Tree Farms Property to himself without prior court approval. Section 737.402(2), provides that, “[i]f the duty of the trustee and the trustee’s individual interest or his or her interest as trustee of another trust conflict in the exercise of a trust power, the power may be exercised only by court authorization.” Thus, unless there was prior approval by the court authorizing the transfer that Dana made as Trustee, the transfer is void. We note that although there are some exceptions to the requirement of obtaining court approval in the current version of section 737.403 (none of which apply to the circumstances here), there are no exceptions to the version of section 737.403 that was in effect in August 1994, at the time during which the transfer occurred.
 

 We found in
 
 Brigham,
 
 934 So.2d at 544, that Dana and Patricia violated section 737.403, by paying their attorney fees from trust assets without receiving prior court approval. Similarly here, we conclude that Dana’s transfer of the Brigham Tree Farms Property to himself was a conflict of interest requiring prior court approval. The transfer was for Dana’s own individual benefit and was to the detriment of the beneficiary of the EFP Land Trust, which was the 1990 Revocable Trust, of which the appellants were beneficiaries. This transfer diminished the assets of the 1990 Revocable Trust. Because the appellants were beneficiaries, they had standing to challenge these actions, and thus the trial court had jurisdiction over the appellants, and the trusts and assets.
 

 Appellants direct this Court to
 
 Keye v. Gautier,
 
 684 So.2d 210 (Fla. 3d DCA 1996), in support of their position. In
 
 Keye,
 
 we affirmed summary judgment in favor of a beneficiary against a trustee.
 
 Id.
 
 The trial court found that the trustee failed to comply with the provisions of the trust by mismanaging and misappropriating trust funds for his own benefit.
 
 Id.
 
 The trustee reinvested the funds of the trust into a loan to himself secured by a mortgage on a building owned by the trustee and his wife.
 
 Id.
 
 The trustee did not identify the trust as a mortgagee.
 
 Id.
 
 The beneficiary sued, after the conflicted transaction, alleging breach of fiduciary duty by misappropriating trust assets.
 
 Id.
 
 at 210. We stated:
 

 When Keye permitted the trust to make a loan from the trust to himself, for his own benefit, without providing
 
 *383
 
 the trust with a means of recourse if Keye defaulted upon his mortgage, he violated section 737.403(2), by not receiving express authorization from a court before engaging in this type of self-dealing. The public policy of this State, as articulated in numerous court decisions, frowns upon a trustee using trust funds unnecessarily at risk.
 

 Id.
 
 at 211. Relevant to the case before us, we cited section 737.403(2), which requires a trustee to seek court approval from a court for the exercise of a trust power when it conflicts with the trustee’s individual interest.
 
 See Bailey v. Leatherman,
 
 615 So.2d 810 (Fla. 3d DCA 1993);
 
 Barnhart v. Hovde,
 
 490 So.2d 1271 (Fla. 5th DCA 1986).
 

 Consequently, we agree with appellants that Dana’s improper transfer must be set aside and the final judgment reversed so that the proceeds from the sale and interest be returned to the EFP Land Trust and then distributed in accordance with the terms of the 1990 Revocable Trust. Appellees contend that the court approval requirement does not apply to the gift by Dana to himself because the statute does not apply to land trusts.
 
 [1]
 
 We find this argument to be unpersuasive. The trial court found that:
 

 [I]t is not disputed that as trustee, Dana, conveyed the Cloud Valley (Brigham Tree Farms) property from a trust in which he was not a beneficiary to a trust in which he is sole beneficiary. This transfer to Dana would be a conflict of interest if court approval (pursuant to 737.403(2) Fla. St.) were required.
 

 Appellees argue that pursuant to section 731.201(33), land trusts are excluded from the definition of a “trust” under all of chapter 737. We disagree. Chapter 737 has been applied by courts to regulate and to rule on land trusts, and chapter 737 is directly referred to in the Florida Land Trust Act, section 689.071(5). The definition of a “trust” under section 731.201(33), states it does not include a land trust created under section 689.05. However, the trust created by the EFP Brigham Land Trust No. 1 dated September 28, 1991 (the “EFP Trust”), was not a land trust created under section 689.05. Although the EFP Trust was executed by Marion and was a written trust, it did not comply with the requirements of section 689.071.
 

 A review of the Deed for the EFP Trust (the “EFP Trust Deed”) from Marion to Dana, as trustee to the EFP Trust, shows that it failed to qualify as a “recorded instrument” to create a Florida Land Trust under section 689.071. For the “recorded instrument” to create a Florida Land Trust, the deed must state the following pursuant to section 689.071(1):
 

 (1) Every conveyance, deed, mortgage, lease assignment, or other instrument heretofore or hereafter made, hereinafter referred to as “the recorded instrument,” transferring any interest in real property in this state, ... is designated “trustee,” or “as trustee,” without therein naming the beneficiaries of such trust, whether or not reference is made in the recorded instrument to any separate collateral unrecorded declarations or agreements, is effective to vest, and is hereby declared to have vested, in such trustee full rights of ownership over the real property or interest therein, with full power and authority as granted and provided in the recorded instrument to
 
 *384
 
 deal in and with the pi'operty or interest therein or any part thereof; provided, the recorded instrument confers on the trustee the power and authority either to protect, conserve and to sell, or to lease, or to encumber, or otherwise to manage and dispose of the real property described in the recorded instrument.
 

 The EFP Trust Deed failed to contain language that conferred on Dana, the trustee, the power and authority “either to protect, conserve and to sell, or to lease, or to encumber, or otherwise to manage and dispose of the real property described in the recorded instrument.” Because Dana, as the lawyer that created and transferred the Deed to North Carolina attorneys for recordation, failed to include the formalities in the Deed required to create a Florida Land Trust under section 689.071, it is a trust regulated by chapter 737.
 

 Moreover, even if it had qualified as a land trust, we agree with appellants that the reasoning set forth in the case of
 
 In re Saber,
 
 233 B.R. 547 (Bkrtcy.S.D.Fla.1999), is instructive on why the requirements of section 737.403, should apply to Dana, as the trustee: “Although the real and personal property interests of Florida land trust are divided between the trustee and beneficiary, a Florida Land Trust is essentially the same as an ordinary trust in terms of the duties, rights and responsibilities of the trustee and beneficiary.”
 
 Id.
 
 at 554. For these reasons, Dana, as Trustee,
 
 of
 
 either a land trust
 
 or
 
 a trust, was required to comply with section 737.403(2), when Dana gifted the Brigham Tree Farm Property to himself.
 

 b. The Brigham Tree Farms Property Transfer from Dana as Trustee to Dana individually violated the clear and unambiguous terms of the trust documents.
 

 Turning to the appellants’ second issue on appeal, we conclude that the trial court erred in not voiding the Brigham Tree Farms Property transfer from Dana to himself because it violated the clear and unambiguous terms of the applicable trust documents. These terms required that any transfer out of the trust or trust(s) or assignment of interest be in writing. .
 

 Any transfer under an Illinois land trust must be in writing. As the court in
 
 LaSalle National Bank v. Federal Emergency Management Agent,
 
 No. 84 C 9066, 1985 WL 2081, at *5 (N.D.Ill. July 26, 1985), stated: “The trustee agrees to deal with the
 
 res
 
 of the trust only upon written direction of the beneficiaries.... The trustee is not required to ‘inquire’ into the propriety of any ‘direction’ received from the authorized persons.”
 
 See also In re Marriage of Gross,
 
 324 Ill.App.3d 872, 258 Ill.Dec. 330, 756 N.E.2d 312 (2001). The court in
 
 LaSalle
 
 further stated:
 

 An Illinois land trust is a unique creature of Illinois law whereby real estate is conveyed to a trustee under an arrangement reserving to the beneficiaries the full management and control of the property. The trustee executes deeds, mortgages or otherwise deals with the property at the written direction of the beneficiaries. The beneficiaries collect rents, improve and operate the property and exercise all rights of ownership other than holding or dealing with the legal title.... While legal title to the real estate is held by the trustee, the beneficiaries retain ‘the power of direction’ to deal with the title, to manage and control the property, to receive proceeds from sales or mortgages and all rentals and avails on the property. The trustee agrees to deal with the res of the trust only upon written direction of the beneficiaries.... The trustee is not required to “inquire into
 
 *385
 
 the propriety of any direction” received from the authorized persons.
 

 LaSalle,
 
 1985 WL 2081, at *5
 
 (quoting Robinson v. Chicago Nat’l Bank,
 
 32 Ill.App.2d 55, 176 N.E.2d 659, 661 (1961) (in its description of Illinois land trusts). As the court stated in:
 
 Gross:
 

 The trustee accordingly is a mere vessel of title. It exercises no control over the property and only acts according to the beneficiaries’ directions.
 
 People v. Chicago Title & Trust Co.,
 
 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979). Accordingly, the single warranty or representation that a trustee makes upon execution of documents is that it has the power and authority to appropriately execute the instruments.
 

 Gross,
 
 756 N.E.2d at 315-16.
 

 A review of the EFP Land Trust is unambiguous in its requirement that assignments of the interest or transfers of the trust corpus must be in writing. Paragraph 3 provides, in pertinent part: “The interest of a Beneficiary(ies) may be assigned or transferred only if the consent of persons holding in excess of fifty percent (50%) of all such interests is first obtained and the provisions of Paragraph 18 hereof adhered to.”
 

 Paragraph 18 of the EFP Land Trust states:
 

 Subject to Paragraph 2 hereof, the interest of a Beneficiary(ies), or any party thereof, may be transferred only by a written assignment thereof, executed in duplicate and delivered to the Trustee ... No assignment of any interest hereunder (other than by operation of law) that is not so executed, delivered and accepted shall be binding upon the Trustee, and any such assignment which is not so executed, delivered, and accepted shall be void as to all subsequent Assignees or purchasers with or without notice.
 

 As such, by the very terms of the EFP Land Trust, any transfer or assignment of interest that did not comply with paragraph 18 is void as a matter of law. Moreover, the EFP Land Trust did not contain an express provision permitting the trustee to gift to anyone, including himself, property of the trust. In addition, paragraph 11 of the EFP Land Trust provided that the trust could be amended, extended, revoked or terminated only by written agreement signed by the trustee and the “Beneficiary(ies).”
 

 Here, the beneficiary of the EFP Land Trust was the 1990 Revocable Trust. The terms of the 1990 Revocable Trust provide that any transfers must be in writing signed by Marion, and that transfers must be consistent with the requirements of Florida law in order for the recording of a deed or real property to be effective when delivered to the trustee. The 1990 Revocable Trust stated in article III that any withdrawals from the trust must be in writing:
 

 The Settlor shall have the right, to be exercised from time to time by writing or writings signed and acknowledged by her in the manner required by the laws of the State of Florida for the recording of a deed or real property to be effective when delivered to the Trustee:
 

 There was no duly executed written instruction to withdraw any trust property from the 1990 Revocable Trust, as required by the terms of the document. Thus, the Brigham Tree Farms Property could never have been removed from the 1990 Revocable Trust, and the trial court erred in upholding Dana’s transfer of the trust property to himself.
 

 Moreover, we note that when a will is clear and unambiguous on its face, extrinsic evidence of the testator’s intent is inadmissible.
 
 See In re Estate of Benson,
 
 
 *386
 
 548 So.2d 775, 777 (Fla. 2d DCA 1989);
 
 Dutcher v. Estate of Dutcher,
 
 437 So.2d 788, 789 (Fla. 2d DCA 1983). This is the same principle applied to trusts.
 
 See Bryan v. Dethlefs,
 
 959 So.2d 314, 317 (Fla. 3d DCA 2007) (refusing to consider extrinsic evidence after finding that the trust terms were unambiguous.)
 

 In the case before us, the trial court impermissibly considered extrinsic evidence of Marion’s alleged intent to give the Brigham Tree Farms Property to Dana. The trial court thus erroneously disregarded the unambiguous terms of the EFP Land Trust and the 1990 Revocable Trust, as well as the requirements of section 737.403(2).
 
 See Robinson v. Robinson,
 
 676 So.2d 511 (Fla. 4th DCA 1996). The trial court erred when it took testimony and made findings on Marion’s intent.
 

 In addition, here, the trial court excused the numerous conflicted transactions presented at trial by finding that it was Marion’s intent and/or that Marion had signed several releases. The court made no findings regarding whether these conflicted transactions had to be submitted to the court for prior approval or had to be in writing per the unambiguous terms of the trusts. Accordingly, because we conclude that the Brigham Tree Farms Property transfer must be voided, the Final Judgment dealing with all of the other conflicted transactions where Dana and Patricia transferred property to themselves must be reversed.
 

 c. Appellees’ actions were breaches of their fiduciary duties.
 

 Finally, turning to the issue of whether appellees breached their fiduciary duties, the trial court excused the numerous conflicted transactions presented at trial by holding that it was Marion’s intent and/or that Marion had signed several releases. We conclude that the trial court also erred by requiring appellants to prove undue influence to maintain their breach of fiduciary duty claims. We could find no case law to support this requirement. As such, the Final Judgment denying the appellants’ breach of fiduciary claims against Dana and Patricia is reversed.
 

 Dana Brigham had a fiduciary duty as Marion’s trustee and as a lawyer. Using the proper burden of proof to support this cause of action, the evidence is overwhelming that he breached his fiduciary duties as trustee. A trustee has the duty to administer the trust diligently for the benefit of the beneficiaries. See § 737.301, Fla. Stat. (1994);
 
 Friedman v. Friedman,
 
 844 So.2d 789, 791 (Fla. 4th DCA 2003). A trustee must deal impartially with the trust beneficiaries, i.e., treat them even-handedly and act in the interest of the trust as a whole.
 
 Id.
 
 As we stated in
 
 Keye,
 
 684 So.2d at 210,
 

 “finding Keye had breached his fiduciary duty as trustee by mismanaging and misappropriating trust funds for his own benefit. Section 737.403(2) requires a trustee to seek approval from a court for the exercise of a trust power when it conflicts with the trustee’s individual interest.”
 

 As Dana was also Marion’s lawyer, he likewise breached his fiduciary duty. An attorney in dealings with his client must exercise a much higher standard of good faith than is required in ordinary business dealings or arm’s length transactions.
 
 Waldeck v. Marks,
 
 328 So.2d 490 (Fla. 3d DCA 1976). Transactions between an
 
 attorney
 
 and client, where the attorney profits at the client’s expense, will, if not void, be closely scrutinized to determine utmost good faith. Id. Business transactions between lawyers and clients are not prohibited by the Canons of Ethics. However, when they are alleged to have been unfair, this type of transaction is presumptively fraudulent and courts place the burden on the lawyer
 
 *387
 
 to prove complete good faith and the total absence of fraud or overreaching.
 
 Id.; The Fla. Bar v. Rhubottom,
 
 132 So.2d 395 (Fla.1961). The attorneys must show not only that they exercised no undue influence, but also that they gave their clients all the information and advice which it would have been their duty to give if the transaction were made with a stranger.
 
 Abstract & Title Corp. of Fla. v. Cochran,
 
 414 So.2d 284, 285 (Fla. 4th DCA 1982).
 

 Here, Dana did not meet this burden. Dana used Marion’s funds as his personal piggy bank. The trial court erred when it did not set aside Dana’s conflicted payments of Marion’s funds to himself and his wife, Patricia.
 

 An attorney who self-deals with a client must demonstrate that the transaction was as beneficial to the client as if conducted at arm’s length between strangers.
 
 Jordan v. Growney,
 
 416 So.2d 24, 25 (Fla. 4th DCA 1982). There is a heavy burden upon the attorney to show that the transaction was not influenced by the attorney/client relationship.
 
 Waldeck,
 
 328 So.2d at 493. “The whole burden of establishing by clear and convincing evidence the fairness of an agreement purporting to convey a property right from a client to his attorney, and that it was made upon full and adequate consideration, is cast upon the attorney.”
 
 Id.; Abstract,
 
 414 So.2d at 285;
 
 Bolles v. O’Brien,
 
 63 Fla. 342, 59 So. 133 (1912). Morever, where an attorney acquires from his client the subject matter of the litigation (as Dana did here), the burden is on the attorney to show the utmost good faith and fairness.
 
 Williams v. Bailey,
 
 69 Fla. 225, 67 So. 877 (1915). As such, Dana should be held hable for breaching his fiduciary duty. Dana was involved in self-dealing as trustee and as attorney with his client and mother, and did not meet his burden of showing that these transactions occurred in good faith and fairness.
 

 Turning now to Patricia, the record clearly shows that she acted as a fiduciary for Marion and as Dana’s de-facto trustee conducting all of the tasks either at the direction of Dana or on her own accord. Patricia owed a fiduciary duty to Marion. “If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief.”
 
 Doe v. Evans,
 
 814 So.2d 370, 374 (Fla.2002);
 
 Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.,
 
 842 So.2d 204 (Fla. 3d DCA 2003). “Fiduciary relationships may be implied in law and such relationships are ‘premised upon the specific factual situation surrounding the transaction and the relationship of the parties.’ ”
 
 Id.
 
 at 207. Courts have found a fiduciary relation implied in law when “confidence is reposed by one party and a trust accepted by the other.”
 
 Capital Bank v. MVB, Inc.,
 
 644 So.2d 515, 518 (Fla. 3d DCA 1994): To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel and protect the weaker party.
 
 Watkins v. NCNB Nat’l Bank of Fla., N.A.,
 
 622 So.2d 1063, 1065 (Fla. 3d DCA 1993).
 

 Moreover, Patricia owed a duty to Marion as Marion’s employee. An employee owes a duty to her employer to exercise diligence and good faith in matters relating to the employment.
 
 Haynes v. The Singer Co.,
 
 1981 WL 2344 (N.D.Fla. June 19, 1981);
 
 Kilgore Ace Hardware, Inc. v. Newsome,
 
 352 So.2d 918, 919 (Fla. 2d DCA 1977). It is undisputed that Patricia was Marion’s employee. Additionally, the record reflects that Patricia received
 
 *388
 
 $218,607, ostensibly as salary, plus $56,000 as gifts during the final years of Marion’s life.
 

 V. Conclusion
 

 In sum, based on the foregoing, the trial court’s Final Judgment is reversed with instructions to enter judgment in appellants’ favor regarding the Brigham Tree Farms Property and to direct Dana and Patricia Brigham to repay the proceeds from the sale of the Brigham Tree Farms Property with interest to the EFP Land Trust. We further remand for further proceedings consistent with this opinion.
 

 Reversed and remanded with instructions.
 

 [1]
 

 . Appellees also contend that the court approval requirement does not apply to the gift by Dana to Dana for two other reasons: because the statute was repealed prior to the entry of final judgment by the trial court and because appellants did not plead a claim under section 737.403, in their complaint. We find these arguments to be meritless.