930 So.2d 766 (2006)
James ARONSON and Jonathan Aronson, as Trustees of Revocable Indenture of Trust of Hillard J. Aronson, and James Aronson and Jonathan Aronson, individually, Appellants,
v.
Doreen ARONSON, Appellee.
No. 3D05-2960.
District Court of Appeal of Florida, Third District.
May 10, 2006.
Buckingham, Doolittle & Burroughs and H. Michael Muñiz and Michael D. Mopsick, Boca Raton, for appellants.
Shutts & Bowen and William Jay Palmer, Miami, for appellee.
Before FLETCHER, RAMIREZ, and CORTIÑAS, JJ.
CORTIÑAS, Judge.
Appellants, James Aronson and Jonathan Aronson, individually, and as Trustees of the Aronson Trust, appeal from a final order finding that Hillard Aronson's (the "Settlor" or "Mr. Aronson") quit claim deed conveying his Florida condominium to his second wife, Doreen Aronson ("Ms. Aronson"), was valid.
In early 1996, the Settlor was the sole owner of a condominium located in Key Biscayne, Florida (the "property"). On July 2, 1996, while residing in Massachusetts with Ms. Aronson, the Settlor created a revocable trust (the "Trust") in which he was both a life beneficiary and a trustee. That same day, the Settlor conveyed the property to himself as trustee, by a warranty deed.
On December 16, 1996, the Settlor, in his individual capacity as "a married man," conveyed the same property to Ms. Aronson by a quit claim deed. On March 13, 2003, Appellants, who are the children of the Settlor from his first marriage, individually and in their capacity as successor trustees of the Trust, filed a complaint seeking a declaratory judgment to invalidate the conveyance to Ms. Aronson on the *767 ground that the property had already been conveyed to the Trust on July 2, 1996.[1]
Prior to trial, the trial court granted Appellants' motion in limine to bar evidence at trial seeking to prove the Settlor's intent in the execution of the quit claim deed. At trial, the court applied Massachusetts law to construe the Trust. The trial court found that the Settlor intended to reserve his power to withdraw property from the Trust and that Ms. Aronson was "a natural object of his bounty and the Trust contains a number of provisions in her favor." The trial court also found that the Settlor meant to convey whatever interest he had to Ms. Aronson by the quit claim deed. The trial court concluded that there was "sufficient compliance with the Trust requirements" to complete the conveyance.
Appellants argue that the quit claim deed was fatally defective because the Settlor had divested himself of legal title to the property when he conveyed it to himself as trustee. See Buerki v. Lochner, 570 So.2d 1061, 1063 (Fla. 2d DCA 1990)(noting that a trustee is the legal title holder of the trust property). Appellants maintain that, once the Settlor executed a warranty deed transferring his interest in the property to the Trust, legal title to the property fully vested in the trustee and was no longer held by the Settlor in his individual capacity. Therefore, the Settlor no longer possessed a legal interest in the property that he could convey to Ms. Aronson. Additionally, Appellants contend that the trial court committed reversible error when it considered the Settlor's intent in executing the quit claim deed to Ms. Aronson because the language of the deed was clear and unambiguous and the court had properly ruled to exclude the Settlor's intent during a hearing on Appellants' motion in limine.
Conversely, Ms. Aronson maintains that the Settlor reserved the right, in the Trust instrument, to transfer any trust asset in his individual capacity. Ms. Aronson argues that the Settlor withdrew the property from the Trust in compliance with the Trust requirements.
We review the trial court's order de novo as the validity of the conveyance involves a question of law and construction of a written instrument. See Davis v. Rex, 876 So.2d 609, 613 (Fla. 4th DCA 2004); Smith v. Frontier Commc'ns Int'l, Inc., 805 So.2d 975, 976 (Fla. 2d DCA 2001).
Here, the Settlor executed a warranty deed conveying the property to himself, as trustee. Thus, the Settlor, in his capacity as trustee, became the legal title holder of the trust property. See Buerki, 570 So.2d at 1063. Once the Settlor held the property as trustee, for the benefit of the beneficiaries of the trust, he no longer possessed the power to convey the property in his individual capacity.
Although we are unaware of any Florida court decision squarely addressing the issue raised in this case, we are persuaded by the Supreme Court of Massachusetts' decision in Bongaards v. Millen, 440 Mass. 10, 793 N.E.2d 335 (2003). In Bongaards, the grantor created a trust where she was the sole trustee, and conveyed real estate to the trust. Id. at 337. A year later, the grantor executed a deed, signed by her as an individual, which purported to convey the real estate to her daughter, Jean. Id. at 338. The court had to consider whether Jean's estate, for the purposes of determining her husband's elective share, included the subject real estate. Id. at 338. The court rejected the husband's argument that the deed needed to be considered *768 in conjunction with the grantor's intent and Jean's acquiescence to that intent. Id. at 339. Instead, the court found that, where a deed is clear and unambiguous on its face, a mutual intent to convey and receive title to the property is irrelevant. Id. Accordingly, the court found that, since the grantor did not own the property in her individual capacity, she could not validly convey it by a deed notwithstanding the parties' intent. Id.
Ms. Aronson notes that the Bongaards court acknowledged that a trust instrument may permit partial revocation or alteration of a trust, provided that there is a reserved power to do so, and provided further that the authority is "`exercised in strict conformity to its terms.'" Bongaards, 793 N.E.2d at 339 (emphasis added)(quoting Phelps v. State St. Trust Co., 330 Mass. 511, 115 N.E.2d 382, 383 (1953)). "The law of Massachusetts is plain that a valid trust, once created, cannot be revoked or altered except by the exercise of a reserved power to do so, which must be exercised in strict conformity to its terms." Phelps v. State St. Trust Co., 330 Mass. 511, 115 N.E.2d 382, 383 (1953). In support of her position, Ms. Aronson refers to several provisions in the Trust, which reserved certain powers to the Settlor. For example, the Trust contains the following provisions:
ARTICLE I
The Settlor shall have the right to revoke the Trust hereunder, or to withdraw any portion of the Trust fund, in whole or in part, or to amend this agreement from time to time by an instrument in writing delivered to the Trustee.
. . .
ARTICLE IV
. . .
(A) While the Settlor survives and while neither of the two conditions (i) or (ii) below has occurred, the Settlor shall have sole responsibility for the supervision and character of the investments held in the Trust and for all decisions as to the retention disposition, investment, reinvestment, or other administration of the assets held in the Trust and the Trustee shall abide by such decisions and execute all documents which may be required to effectuate them, including, without limitation, proxies, subscriptions, and documents of sale. . . .
The trial court relied on these provisions in concluding that there was "sufficient compliance with the Trust requirements" to complete the conveyance to Ms. Aronson.
However, assuming that the Trust reserved to the Settlor and the Trustee certain powers to dispose of trust assets, there is no question that Mr. Aronson failed to withdraw the property in strict compliance with the Trust instrument as it required the Settlor to deliver a written document to the Trustee in order to withdraw the Trust assets. See Bongaards, 793 N.E.2d at 339. Instead, Mr. Aronson conveyed real property in his individual capacity, which he did not legally own in that capacity. Accordingly, the subsequent transfer was invalid as a matter of law.
We need not and, indeed, cannot attempt to glean Mr. Aronson's intent in transferring the property to the trust, or subsequently to Ms. Aronson in his individual capacity. Here, there was no ambiguity in either the original transfer of the property to the Trust by warranty deed or the subsequent transfer of the property to Ms. Aronson by quit claim deed. See Dolphins Plus, Inc. v. Hobdy, 650 So.2d 213, 214 (Fla. 3d DCA 1995)(noting that unambiguous *769 language of a written instrument is not subject to judicial construction or interpretation). Having created a valid trust and being familiar with the powers he retained therein, as well as the law in this area, Appellants contend that Mr. Aronson's intent was to appease his second wife and effectuate a sham transaction he knew to be legally invalid. Conversely, it is argued that Ms. Aronson was the natural object of Mr. Aronson's bounty and that the subsequent transfer must be held to be valid to give meaning to Mr. Aronson's actions. These and other explanations may exist in attempting to ascertain the true motive behind Mr. Aronson's actions. However, the choice of any particular scenario to explain and give meaning to Mr. Aronson's intent involves guesswork that is not likely to produce enduring legal principles under which to consider future cases.
Rather than attempt to guess Mr. Aronson's intent, especially where there is no ambiguity, we are persuaded by the legal reasoning and holding in Bongaards. Since Mr. Aronson, the grantor, did not own the property in his individual capacity, he could not validly convey it by a deed, notwithstanding his intent. See id.
Reversed and remanded.
NOTES
[1] The dispute concerns the remainder interest in the property as Appellants concede that the Trust provides Ms. Aronson with a life estate in the property.