ON REHEARING GRANTED
 

 SHEPHERD, J.
 

 On consideration of Appellants’ motion for rehearing, the Court withdraws its opinion issued on October 27, 2010, and substitutes the following opinion in its stead:
 

 This appeal is a sequel to our decision in
 
 Aronson v. Aronson,
 
 930 So.2d 766 (Fla. 3d DCA 2006)
 
 (Aronson I),
 
 in which we held that a husband’s quitclaim in his individual capacity of a marital residence to his wife was a nullity because he previously had conveyed title to the property to a revocable trust.
 
 Id.
 
 at 769. We now decide whether the law permits the deceased husband’s plan for the disposition of the property to be honored in the face of the widow’s objection that the property is protected homestead, for which the disposi-tional terms for the property are delimited through article X, section 4(c) of the Florida Constitution.
 
 [1]
 
 We hold that the constitutional provision controls. A summary of the factual history of this case is necessary to explain our decision.
 

 On July 2,1996, while residing in Massachusetts with his wife, Doreen, Hillard J. Aronson created the Hillard J. Aronson Revocable Trust, naming himself as Trustee, and conveyed certain property, including a Key Biscayne condominium titled in his name alone, to the trust. On November 10, 2001, Hillard Aronson died, survived by his wife and two sons from a prior marriage, the appellants, James and Jonathan Aronson. James and Jonathan became the successor trustees by the terms of the Trust. The year before Hillard died, the couple sold their Massachusetts home, which had been titled in Doreen’s name alone, and moved into the Key Biscayne condominium. Doreen applied $129,895 of the proceeds from the sale of the Massachusetts home to satisfy the then-existing mortgage on the condominium.
 

 The trust document provided, upon Hil-lard’s death, for a life interest in Doreen in all of the remaining assets of the trust after payment of last expenses and certain specific bequests (which appear to have lapsed for reasons immaterial to our decision). The trust instrument further provided, “Upon the death of the Settlor’s said wife, the balance of the Trust property remaining in the hands of the Trustee shall be distributed to the Settlor’s children, James D. Aronson and [Jonathan R.] Aronson in equal shares, share and share alike.” At the time of Hillard’s death, the sole remaining asset of the Revocable Trust was the Key Biscayne condominium. Thus, the trust document effectively gave a life estate in the Key Biscayne condominium to Doreen Aronson, with the remainder to the two sons. However, the Trust, in Article XII, section two, contained one additional provision in the same dispositive paragraph:
 

 
 *518
 
 There shall also be paid or transferred to the Settlor’s said wife, free and discharged of all trust, upon her written requisition delivered to the Trustee, such portions of the principal of said Trust fund as she may from time to time request, not exceeding, however, in valuation the greater of Five Thousand ($5,000.00) Dollars or five (5%) per cent of the market value of the principal of this Trust portion on the last day of the calendar year in which such withdrawal is requested, in any one calendar year, each such payment or transfer to be made thirty (30) days from the receipt of the requisition therefor. This right of withdrawal of principal shall be noncumulative, and to the extent not exercised in any calendar year, shall terminate as to that year. In case of the death of the Settlor’s said wife, before payment or transfer but after requisition, the distribution shall lapse and maintain a part of this Trust.
 

 After Doreen’s unsuccessful claim in
 
 Ar-onson
 
 I — that she received all of her deceased husband’s right, title, and interest in the Key Biscayne condominium to the exclusion of the two sons by virtue of the quitclaim deed — Doreen began to make annual requisitions for a transfer of a five percent interest in the condominium unit to her pursuant to the above provision. She also demanded the Trust reimburse her in the amount of the mortgage pay-off on the condominium made prior to her husband’s death, and for all taxes, special assessments, and other expenses of the condominium, all of which she claimed, based upon
 
 Aronson I,
 
 were obligations of the Trust. The trustees countered with a plan to sell the condominium pursuant to its general trust powers so the Trust could satisfy the annual requisitions and distribute the remaining sums to themselves. The controversy devolved into litigation by the end of 2006.
 

 By her amended complaint, Doreen sought a declaration that the property she occupied was homestead property, not subject to sale by the successor trustees, for specific performance of her annual principal requisitions, return of the sums from the Massachusetts home owned by her, which was used to pay off the mortgage on the Key Biscayne condominium under the mistaken belief she owned the property in fee simple, and for all of her expenses in maintaining the condominium for the benefit of the titleholder Trust since the date of her husband’s death. After a non-jury trial, the trial court found in an amended and clarified final judgment that Doreen’s property was “the homestead of Doreen Anderson,” ordered the Trust to reimburse her for the amount of the mortgage pay-off in the sum of $129,895, and ordered the Trust to pay Doreen an additional $136,519.67 for condominium repair and improvement expenses, but excluded annual property taxes, maintenance fees, special assessments, and insurance costs incurred by Doreen since she has occupied the condominium alone after her husband’s death. The trial court also found she had the power to demand the trustees execute a deed transferring an interest in the trust principal equal to a five percent interest in the Key Biscayne condominium for each year she requests a principal distribution.
 

 ANALYSIS
 

 We reverse the judgments under review. First, it is undisputable the Key Biscayne condominium was the decedent’s homestead at the time of his death.
 
 [2]
 
 Séc-
 
 *519
 
 ond, article X, section 4(c) of the Florida Constitution provides that “[t]he homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner’s spouse if there be no minor child.” Art. X, § 4(c), Fla. Const. Third, the Florida legislature has made clear its command that this provision shall apply equally to property held by a revocable trust as to testamentary bequests. § 732.4015(2)(a), Fla. Stat. (2001);
 
 Cutler v. Cutler,
 
 994 So.2d 341, 343 (Fla. 3d DCA 2008);
 
 Engelke v. Estate of Engelke,
 
 921 So.2d 693, 697 (Fla. 4th DCA 2006). Finally, section 732.401(1) of the Florida Statutes (2001), provides:
 

 (1) If not devised as authorized by law and the constitution, the homestead shall descend in the same manner as other intestate property; but if the decedent is survived by a spouse and one or more descendants, the surviving spouse shall take a life estate in the homestead, with a vested remainder to the descendants in being at the time of the decedent’s death per stirpes.
 
 [3]
 

 (emphasis added). Because the Key Biseayne condominium was Hillard’s homestead and because his wife, Doreen, survived him, the condominium was not subject to disposition through the trust.
 
 See In re Estate of Scholtz,
 
 543 So.2d 219, 221 (Fla.1989);
 
 see also City Nat’l Bank of Fla. v. Tescher,
 
 578 So.2d 701, 703 (Fla.1991);
 
 Ergos v. State,
 
 670 So.2d 1079, 1080 (Fla. 2d DCA 1996) (Altenbernd, J. concurring). At the moment of Hillard’s death, his homestead property passed outside of probate,
 
 see
 
 §§ 733.607, .608, Fla. Stat. (2001);
 
 Wilson v. Fla. Nat’l Bank & Trust Co. at Miami,
 
 64 So.2d 309 (Fla.1953);
 
 Clifton v. Clifton,
 
 553 So.2d 192, 194 n. 3 (Fla. 5th DCA 1989), in a twinkle of an eye, as it were, to his wife for life, and thereafter to his surviving sons, James and Jonathan per stirpes. § 732.401(1), Fla. Stat. From- that moment forward, the trustees had no power or authority with respect to the former marital home. The widow became responsible for the expenses of the property, and, of course, remains so for as long as she remains a life tenant.
 
 See Schneberger v. Schneberger,
 
 979 So.2d 981, 983 (Fla. 4th DCA 2008) (affirming trial court judgment declaring that life tenant was responsible “to pay all ordinary and necessary expenses that inure to a homeowner, including taxes, insurance, homeowner’s association fees, and general repairs for the upkeep and maintenance of the property”);
 
 Williams v. Williams,
 
 120 So.2d 202, 205 (Fla. 3d DCA 1960) (stating life tenant who voluntarily made improvements to property during the course of (or after) her tenancy may not recover the cost thereof from remaindermen even if remainder-men knew the improvements were being
 
 *520
 
 made by the holder of the life estate and passively acquiesced);
 
 see also
 
 Henry P. Trawick,
 
 Redfeam Wills & Admin. in Fla.,
 
 § 9:3 (2011) (confirming that “[a life tenant] must pay the taxes, insurance, association fees, repairs for upkeep and maintenance during the tenancy unless the document creating the estate provides otherwise”) (citing
 
 Schneberger,
 
 979 So.2d at 982;
 
 Williams,
 
 120 So.2d at 204-205). Finally, reasoning inductively from
 
 Williams,
 
 120 So.2d at 205, in which we held that where a life tenant pays off a mortgage outstanding against the estate, he is entitled to reimbursement from the re-maindermen, we find there is no basis in law to charge the remaindermen with the obligation to reimburse the widow for the amount she paid to satisfy the mortgage on the condominium before her husband’s death, even if she did so under the mistaken belief that she was the titleholder to the property.
 

 Reversed and remanded for proceedings in compliance herewith.
 

 [1]
 

 . The appellants argue certain of the widow’s claims are barred by res judicata. Because the claims made in the amended complaint filed by her in this action are different from those made by the appellants in
 
 Aronson I,
 
 there is no res judicata defense available to the appellants in this case.
 
 See AMEC Civil, LLC
 
 v.
 
 State Dep’t of Transp.,
 
 41 So.3d 235, 245 (Fla. 1st DCA 2010);
 
 Jones v. State ex rel. City of Winter Haven,
 
 870 So.2d 52, 55 (Fla. 2d DCA 2003);
 
 Pipkin v. Wiggins,
 
 526 So.2d 1002, 1003 (Fla. 3d DCA 1988) (holding res judicata did not bar current litigation when prior litigation between the parties involved one breach of obligation under a joint venture agreement and instant litigation was based upon a different cause of action from a subsequent interference with the same agreement).
 

 [2]
 

 . Three requirements must be satisfied for real property to be impressed with the characteristics of homestead property under arti-ele X, section 4 of the Florida Constitution: (1) the property must be owned by a "natural person”; (2) the owner must have made, or
 
 *519
 
 intend to make the real property his or her permanent residence or that of his family; and (3) the property must meet the size and contiguity requirements of article X, section 4(a)(1) of the Florida Constitution.
 
 Cutler v. Cutler,
 
 994 So.2d 341, 344 (Fla. 3d DCA 2008). The estate owned need not be fee simple, but may be any type of interest in the property, legal or equitable, so long as the interest is a possessory interest.
 
 See Hill v. First Nat'l Bank of Marianna,
 
 73 Fla. 1092, 75 So. 614 (1917) (tenancy in common);
 
 Smith v. Unkefer,
 
 515 So.2d 757 (Fla. 2d DCA 1987) (life estate);
 
 Heiman v. Capital Bank,
 
 438 So.2d 932 (Fla. 3d DCA 1983) (equitable interest);
 
 but see Aetna Ins. Co. v. LaGasse,
 
 223 So.2d 727 (Fla.1969) (remainder interest does not qualify).
 

 [3]
 

 . In 2010, section 732.401 was amended to allow the surviving spouse to elect an undivided one-half interest in the homestead property in lieu of the life estate.
 
 See
 
 Ch. 2010-132, § 7, Laws of Fla.