DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JACK N. SCHLOSSBERG,**
Appellant,

v.

**ESTATE OF SADIE KAPOROVSKY, MATTHEW HIRSCHHORN,**
as Personal Representative of the Estate of Sadie Kaporovsky, and
**CANDY WISOTSKY,**
Appellees.

No. 4D19-2053

[August 5, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Charles M. Greene, Judge; L.T. Case No. PRC 09-4197.

Michele A. Cavallaro of Fidelity National Law Group, Fort Lauderdale, for appellant.

Christopher Q. Wintter and Kara L. Strochlic of Wintter Law, Fort Lauderdale, for appellees.

*ON MOTION FOR REHEARING AND FOR REHEARING EN BANC*

WARNER, J.

We deny appellee's motion for rehearing, but withdraw the opinion and issue the following in its place.

Appellant, Jack Schlossberg, challenges a final judgment declaring that he owned only a one-half interest in a condominium, the other half being owned by appellee, Estate of Sadie Kaporovsky. The court found that the deed conveying the property from the Sadie Kaporovsky revocable trust to Sadie Kaporovsky for life, with remainder to her daughter, Candy Wisotsky, was void *ab initio*. Wisotsky sold the property to Schlossberg after Sadie's death. Because Sadie, the settlor of the trust, signed the deed of conveyance both individually and as trustee, and her co-trustee joined in the deed, we hold that the deed was valid to convey the interest in the property. Furthermore, Schlossberg was a bona fide purchaser for value without notice, and his motion for summary judgment should have been

granted as to any claim that the deed may have been voidable for undue influence. We therefore reverse.

We state the facts relevant to the legal issues in this appeal, recognizing that there are several claims between other parties as to undue influence, which do not impact this case.

Sadie owned a condominium in Palm Beach County. In 2000, she executed a deed which conveyed ownership of the unit to herself and her daughter, Wisotsky, as joint tenants with right of survivorship. Several years later, in 2004, Sadie established the "Sadie Kaporovsky Intervivos Trust Agreement," a revocable trust. The trust appointed Sadie and Wisotsky as co-trustees. An amendment to the trust required that all acts and powers exercised by the trustees be performed by both trustees. (This provision was removed by a subsequent amendment but then later reinstated.)

The trust contained several provisions regarding the disposition of principal and the right to revoke the trust. It allowed the trustees to apply principal of the trust for the settlor's use, care, support and general maintenance, including any and all assets of the trust estate. It authorized the settlor to revoke the trust in whole or in part, by instrument delivered in writing to the trustee. With respect to the trustees' powers, the trust provided that the trustees had the power to sell or convey any property of the trust in their discretion, as well as to do all acts or exercise any rights or privileges as could be done by the absolute owner of the property, subject to the trustees' fiduciary obligations.

After the trust was created, Sadie executed a deed conveying her interest in the condo unit from Sadie, "a single woman Grantor" to Sadie as Trustee of the Trust "Grantee." The purpose of the 2004 deed, according to the attorney who prepared it for Sadie, was to eliminate Wisotsky's right of survivorship by breaking the joint tenancy. Thus, at that point Wisotsky and the Trust each owned an undivided interest in the condo.

The dispute at issue here arose out of a 2005 deed transferring the condo unit from the Trust to Sadie, with a life estate to Sadie and the remainder to Wisotsky. The 2005 deed conveys the condo unit as follows:

> This Quit-Claim Deed, Executed this 16th day of September, A.D. 2005 by SADIE KAPOROVSKY, a single woman and CANDY WISOTSKY, a single woman, individually and as Trustees of the SADIE KAPOROVSKY INTERVIVOS TRUST

2

> AGREEMENT dated April 29, 2004 first party, to SADIE KAPOROVSKY, a life estate, with the remainder to CANDY WISOTSKY . . . . second party.

The 2005 deed is signed by Sadie and Wisotsky, both individually and as trustees.

Sadie died in February 2009. Based upon the remainder interest, Wisotsky then held title to the entire condo. Wisotsky sold the condo unit to Schlossberg in July. During the probate of Sadie's estate, Wisotsky brought an adversary proceeding against Sadie's son, Hirschhorn, in his position as personal representative. In response, Hirschhorn filed a counterclaim against Wisotsky and a third-party action against Schlossberg, claiming that the 2005 deed of the remainder interest to Wisotsky was void, because the trustees were only permitted by the trust to distribute/transfer Trust property to the settlor or for the benefit of the settlor. Hirschhorn claimed the transfer of the remainder interest to Wisotsky was not for the benefit of the settlor. By conveying the remainder interest, Hirschhorn claimed Wisotsky improperly gifted trust property to herself in violation of the terms of the Trust. Therefore, he contended that when Wisotsky sold the condo unit to Schlossberg, she only conveyed her one-half interest (from the deed in 2000), and the Estate owned the other half. Schlossberg answered and asserted the following affirmative defenses that are relevant here on appeal: (1) that Sadie as settlor had the power to execute the deed; and (2) that Schlossberg was a bona fide purchaser for value and title passed to Schlossberg because of his status as such.

Motions for summary judgment were filed on Hirschhorn's second amended counterclaim by Hirschhorn, Wisotsky, and Schlossberg. The court granted summary judgment to Hirschhorn and determined that the 2005 deed gifting to Wisotsky the remainder interest in the condo unit was beyond the trustees' powers granted by the trust instrument, because it was not for the settlor's benefit. The trustees had no authority to gift the remainder interest to Wisotsky, who also acted with a conflict of interest in conveying the remainder interest to herself. Thus, the court reasoned that the deed was void as a matter of law, which left the half interest in the condo unit in the trust.

Schlossberg filed a motion for rehearing, claiming that the 2005 deed was an implicit revocation of the trust as to the condo unit. The court denied the motion, finding that the deed did not constitute a revocation instrument on its face. "[Sadie] never acquired individual ownership absent revocation, and she could not transfer legal title to the trust's one-

half remainder interest in her individual capacity." The court held the quit claim deed was void *ab initio*. As the judgment was final as to Schlossberg, he appeals.

Summary judgment is proper if there is no genuine issue of material fact, and if the moving party is entitled to a judgment as a matter of law. *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). The standard of review from an appeal of a final judgment based on an order granting summary judgment is de novo. *Id.* Review of the terms of a trust agreement and its proper interpretation is a question of law subject to de novo review. *Burgess v. Prince*, 25 So. 3d 705, 706 (Fla. 2d DCA 2010). In this case, the parties stipulated to the evidence, and no factual disputes existed. *See Aberdeen at Ormond Beach, L.P.*, 760 So. 2d at 130.

As recognized by the Florida Supreme Court,

> A revocable trust is a unique type of transfer . . . . Since [the settlor] is the sole beneficiary of the trust during [the settlor's] lifetime, [the settlor] has the absolute right to call the trust to an end and distribute the trust property in any way [the settlor] wishes.

*Fla. Nat'l Bank of Palm Beach Cty. v. Genova*, 460 So. 2d 895, 897 (Fla.1985). *See also, Siegel v. Novak*, 920 So. 2d 89, 95 (Fla. 4th DCA 2006) ("The central characteristic of a revocable trust is that the settlor 'has the right to recall or end the trust at any time, and thereby regain absolute ownership of the trust property.'")

The 2005 deed, executed by the settlor individually, as well as by both trustees of the trust, is valid in accordance with the trust provisions for two reasons. First, the trust allowed the settlor to revoke the trust in whole or in part by a written instrument delivered to the trustees. Second, the trust authorized the trustees to apply any part of the trust assets to the settlor's *use*.

Sadie's trust provided that the trust could be revoked, in whole or in part, by an instrument in writing delivered to the trustees. It did not describe the form of that instrument. "Ordinarily a power to revoke the trust will be interpreted as including a power to revoke the trust in part by withdrawing a part of the trust property from the trust." Restatement (Second) of Trusts § 330 (1959). The deed, withdrawing the condo from the trust, was a written instrument executed by both co-trustees and the

settlor. It had the effect of removing the condo from the trust. Therefore, the settlor revoked the trust in part as to the condominium.

The parties agree that the trustees could convey the condo to the settlor. The trustees did so through the 2005 deed. This would also have been considered the application of the trust assets for the settlor's *use,* which the trustees are specifically authorized to do through conveyance of property. Thus, the co-trustees could have conveyed the property to the settlor, which would have removed the condo from the trust. Then the settlor could have conveyed the property free of trust to herself for life with remainder to Wisotsky.

We liken this case to *Countrywide Funding Corp. v. Palmer,* 589 So. 2d 994 (Fla. 2d DCA 1991). The question in that case was whether a joint tenancy with right of survivorship could be terminated by a deed from one joint tenant to himself. The deeded property had been owned by a mother and son with right of survivorship. Through a quit claim deed the property was conveyed to the son individually, but it was shown that the mother's signature was forged. Therefore, only the son conveyed to himself. Based upon existing Florida law, the trial court found that, to be effectual, the son had to convey the property first to a strawman who could then convey the property back to the son; otherwise, the quit claim did not terminate the joint tenancy with right of survivorship.

On appeal, the court disagreed that conveyance to the strawman was necessary:

> We recognize, as did the trial court, that a joint tenant under a joint tenancy with right of survivorship is entitled to terminate the joint tenancy by the conveyance of his interest to a third party. *See* 20 Am. Jur. 2d Cotenancy and Joint Ownership § 16 [p. 109] (1965). However, *Ratinska v. Estate of Denesuk,* 447 So. 2d 241 (Fla. 2d DCA 1983), held that although, in the creation by a person of a joint tenancy with right of survivorship in that person and another, the use of a strawman to whom to first convey that person's interest before the time of the conveyance creating the joint tenancy is "an acceptable method of obtaining the desired result," that "does not make it the only available or even the most desirable method." 447 So. 2d at 243. As *Ratinska* added, **"We see no point in requiring that property be conveyed twice when a single conveyance is just as effective and has the virtues of economy and efficiency."** *Id.* Although *Ratinska* was concerned with the creation of a joint tenancy, we see no

5

> reason why the rationale of that case would not also apply to the termination of a joint tenancy.
>
> Thus, we conclude that a joint tenancy with right of survivorship can be, and was in this case, terminated and a tenancy in common created by a conveyance by one joint tenant of his interest to himself.

*Id.* at 995-96. (Emphasis added.)

Applying the principle of *Countrywide Funding* to this case, the trustees had the authority to convey the property to the settlor within the terms of the trust, either as a principal distribution for her use or as a partial revocation of the trust. Then the settlor, individually could have conveyed the property to herself for a life estate, remainder to her daughter. Therefore, when the quitclaim deed was executed by both trustees and by the settlor individually, the deed accomplished with a single conveyance the same requirements as two separate conveyances. We see no need to demand two separate conveyances.

Hirschhorn argues that the trustees had no power to gift the remainder interest in the condo unit to Wisotsky. However, when the one transaction is considered the combination of two transactions, it is apparent that the trustees did not gift the remainder interest, Sadie did.

The trial court cited to *Aronson v. Aronson,* 930 So. 2d 766 (Fla. 3d DCA 2006) to hold that Sadie could not transfer title to herself in her individual capacity, but *Aronson* is distinguishable. In *Aronson,* the settlor of a trust was both a life beneficiary and a trustee of the revocable trust he created. He conveyed property to himself as trustee. Later in the year, the settlor conveyed that property in his individual capacity as "a married man" to his second wife by quit claim deed. The deed was not executed by him as trustee. The court determined that "[o]nce the settlor held the property as trustee, for the benefit of the beneficiaries of the trust, he no longer possessed the power to convey the property in his individual capacity." *Id.* at 767. The difference, of course, between *Aronson* and this case, is that Sadie conveyed the condo both individually and as trustee, and both trustees executed the conveyance. The 2005 deed removed the property from the trust, because it was properly executed by both trustees. The deed conveyed the property from Sadie to herself, with a life estate, and then with the remainder to her daughter, because it was properly executed in her individual capacity.

6

That the 2005 deed consolidated the two transfers is no reason to invalidate the settlor's right to control her property, consistent with the terms of her revocable trust. The 2005 deed complied with all the requirements to convey legal title.

"Where all the essential legal requisites of a deed are present, it conveys legal title." *McCoy v. Love*, 382 So. 2d 647, 649 (Fla. 1979). Generally, void deeds are limited to forged deeds or deeds that violate the constitutional protection of homestead. *See, e.g.*, *Zurstrassen v. Stonier*, 786 So. 2d 65, 68 (Fla. 4th DCA 2001) (holding that a forged deed is void and "thus creates no legal title nor affords protection to those claiming under it."); *Chapman v. Chapman*, 526 So. 2d 131, 134 (Fla. 3d DCA 1988) (holding that deed executed by a husband to convey homestead property to his second wife was void *ab initio* because it violated the Florida Constitution). Given the unique nature of the revocable trust and the settlor's right to control the disposition of her own property, the trial court erred in declaring the deed void.

Because the trial court determined that the deed was void, it did not address Hirschhorn's claims that the deed was voidable. Even though we find the deed to be valid, we address Schlossberg's additional claim that as a bona fide purchaser for value without notice, his title would be valid against a voidable deed.

The trial court rejected this defense based on its finding that the deed was void *ab initio*, citing *Brigham v. Brigham*, 11 So. 3d 374 (Fla. 3d DCA 2009). In *Brigham*, a complicated trust case, a trustee improperly transferred trust property to himself individually and then sold it to a third party. The court held that the transfer to himself without court approval was prohibited by section 737.403(2), "Thus, unless there was prior approval by the court authorizing the transfer that Dana made as Trustee, the transfer is void." *Id.* at 382. We find it significant that the court held that the *transfer* was void, rather than finding that the *deed* was void, because of the relief granted. The court ordered the trustee to refund to the trust the proceeds of the sale to the third party. Had the *deed* from the trustee to himself individually been void, then the property should have been recovered by the trust, not merely the proceeds. Thus, *Brigham* does not offer support for the proposition that the bona fide purchaser defense is not available.

Hirschhorn alternatively claimed that, if not void, the deed was voidable, because the trustees did not have authority to execute the deed. Since we have concluded that the trustees did have authority to convey the condo, the deed is not voidable on that ground.

7

Additionally, Hirschhorn made allegations that the 2005 deed was voidable as the product of undue influence and misrepresentation by Wisotsky and her agents. It is well established that a deed of a person alleged to be incompetent or procured by fraud, overreaching, or undue influence "is voidable but is not void *ab initio*." *Herminghaus v. Crofton*, 187 So. 2d 347, 349 (Fla. 4th DCA 1966) (citing *Hassey v. Williams*, 174 So. 9, 11 (1937)). Fraud in the inducement or undue influence renders a deed voidable in equity. *See McCoy*, 382 So. 2d at 649 (citing *Anders v. Anders*, 197 So. 451 (1940)). Thus, the defense of a bona fide purchaser for value is available to Schlossberg.

Schlossberg moved for summary judgment on his defense that he was a bona fide purchaser for value and entitled to protection from the claim that the deed was void or voidable. "To be a bona fide purchaser, three conditions must be satisfied. The purchaser must have (1) acquired the legal title to the property in question, (2) paid value therefore, and (3) been innocent of knowledge of the equity against the property at the time when consideration was paid and title acquired." *DGG Dev. Corp. v. Estate of Capponi*, 983 So. 2d 1232, 1234 (Fla. 5th DCA 2008).

We have concluded that Schlossberg's title to the property was valid, satisfying the first criterion. As noted by Schlossberg, it is undisputed that he purchased the condo for value, and the warranty deed recites that the purchase price was $400,000, satisfying the second criterion. Hirschhorn has made no claim that Schlossberg had any knowledge of the issues involving undue influence with respect to the transactions in 2005. It is undisputed that Hirschhorn did not file a notice of lis pendens in this case until a year after the purchase, even though he knew of the 2005 deed and the alleged conduct of Wisotsky in securing it by 2006. Schlossberg also relies on section 695.01, Florida Statutes, which protects subsequent purchasers for value and without notice against unrecorded interests in property.

While Hirschhorn argued to the trial court that deciding the bona fide purchaser issue was premature because of ongoing discovery, the discovery was directed to information as to actual notice of the defective deed by Schlossberg's closing agents. By this opinion, we have determined that the deed was not defective and that the trustees did not act without authority. Hirschhorn did not offer any other basis to oppose Schlossberg's motion for summary judgment on his bona fide purchaser

8

status. Therefore, as we review the order on summary judgment de novo,[1] Schlossberg is entitled to the status of a bona fide purchaser for value, and his motion for summary judgment should have been granted by the trial court.

For the foregoing reasons, we reverse the final judgment of the trial court which determined that Wisotsky owned only an undivided one-half interest in the condominium when she sold it to Schlossberg, and that the Estate of Kaporovsky continues to own an undivided half of the condominium. On remand, we direct that the trial court enter a judgment declaring that Schlossberg is the rightful owner of the entire condominium. Our rulings in no way decide any issues with respect to the remaining claims between the Estate and Wisotsky.

DAMOORGIAN and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[1] *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).