NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

WEST BROOK ISLES PARTNER'S 1,         )
LLC,                                   )
                                       )
            Appellant,                 )
                                       )
v.                                     )   Case No. 2D13-6165
                                       )
COMMONWEALTH LAND TITLE               )
INSURANCE COMPANY; NAVARETTA          )
& NAVARETTA, ATTORNEYS AT LAW,        )
P.A.; and STEPHEN NAVARETTA,          )
INDIVIDUALLY,                          )
                                       )
            Appellees.                 )
_____)

Opinion filed April 24, 2015.

Appeal from the Circuit Court for Pinellas
County; Jack Day, Judge.

A. Christopher Kasten, II of Bush Ross,
P.A., Tampa, for Appellant.

Marie A. Borland and J. Scott Slater of
Hill Ward & Henderson, P.A., Tampa, for
Appellees Navaretta & Navaretta, P.A.
and Stephen Navaretta.

Shawn G. Rader, James E. Walson, and
Jennifer R. Dixon of Lowndes, Drosdick,
Doster, Kantor & Reed, P.A., Orlando,
for Appellee Commonwealth Land Title
Insurance Company.


LaROSE, Judge.

West Brook Isles Partner's 1, LLC (WBI), appeals the final summary judgments entered in favor of Commonwealth Land Title Insurance Company, Navaretta & Navaretta, P.A., and Stephen Navaretta, Esquire. We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A). WBI sued the appellees for a real estate transaction that allegedly went bad. After carefully reviewing the record and with the benefit of oral argument, we affirm. We write to explain why the applicable statute of limitations bars WBI's claims.

In 2004, WBI purchased from TAJ Development, Inc., five parcels in an undeveloped condominium project, Westbrook Isles. Allegedly, WBI thought it was buying vacant, unencumbered raw land. WBI intended to build condominium units on the land; but, if that was not economically feasible, WBI would develop the land for other uses. Seemingly, TAJ also believed it was selling unencumbered raw land. However, by virtue of a 1995 Fourth Amendment to the Declarations of Condominium, the parcels rested in the condominium form of ownership. Indeed, Mr. Navaretta prepared and recorded the condominium documents when he counseled the original developer, a joint venture of WBI and TAJ. The joint venture was dissolved in 2003, and TAJ, the seller here, acquired the parcels. The parcels remained undeveloped.

When WBI bought the parcels in 2004 from TAJ, Mr. Navaretta represented WBI; he also served as Commonwealth's title agent. His law firm, Navaretta & Navaretta, P.A., was the closing agent. Our record contains an August 25, 2004, title search report describing the property as phased condominium units. An executed title commitment, dated August 25, 2004, describes the property as twenty

condominium units in phases 2, 7, 8, 9, and 10 of Westbrook Isles Condominium. It notes twenty 2003 real property tax payments for each unit.

The September 21, 2004, purchase and sale agreement refers to the property as "Phases 2, 7, 8, 9, and 10 Westbrook Isles Condominium." The agreement provides that "Seller agrees to sell, and Buyer agrees to purchase the Land, together with all of Seller's right, title and interest (if any) in and to all easements, developments, rights and permits and other appurtenances incidental to the Land." The agreement addresses condominium dues and assessments. On September 29, 2004, Mr. Navaretta sent the August 25 title commitment to Doug East, WBI's agent who had signed the purchase and sale agreement. Mr. Navaretta also sent a copy of the title commitment to TAJ.

On September 22 and 23, 2004, Mr. Navaretta sent Commonwealth the metes-and-bounds descriptions for each parcel, "relevant to [the] title search." Our record contains an unexecuted title commitment package reflecting these metes-and-bounds descriptions.

The October 28, 2004, warranty deed, interestingly, notes that the property is "[s]ubject to condominium documentation, restrictions, reservations and easements of record . . . ." Our record includes the note of a TAJ representative observing that the warranty deed needed correction to properly identify the property. Although Mr. Navaretta testified that he was entitled to rely on the legal description that the Commonwealth title search provided, he later realized that "the recording data was not complete." He claimed that the conveyed property was phases and undeveloped units of a condominium project.

Mr. Navaretta rerecorded a second copy of the warranty deed on November 4, 2004. A notation states as follows: "Subject to condominium documentation, restrictions, reservations and easements of record, if any, and taxes subsequent to December 31, 2003." The January 15, 2005, Commonwealth title insurance policy describes the property as condominiums by phase. A March 2006 mortgage on the property, involving WBI and one of its members, also described the property as twenty "units" within phases and buildings subject to a declaration of condominium. Our record seems clear that at closing, WBI purchased condominiums in a project yet to be developed.

WBI admits that it did not read the key transaction documents, claiming instead that it relied on Mr. Navaretta and his law firm. Mr. Navaretta, for his part, testified that WBI knew it was purchasing only phases in a condominium project.

After the October 2004, closing, WBI marketed the condominium units it planned to build. By August 2006, however, souring market conditions compelled WBI to abandon its sales efforts. When the 2006 mortgage was foreclosed in 2009, the complaint described the property as twenty condominium units. WBI claims that in late 2010 it finally realized it did not own unencumbered raw land. WBI demanded relief from Mr. Navaretta and Commonwealth.

In June 2011, Commonwealth sued WBI for declaratory relief. The complaint alleged (1) that Commonwealth issued a title policy to WBI; (2) that WBI submitted a claim alleging that the warranty deed's legal description was incorrect and did not match the description in the policy; (3) that WBI claimed that Commonwealth was responsible for the alleged failings of Mr. Navaretta and his law firm; and that

(4) Commonwealth procured a corrective warranty deed with the policy's property description and offered to record it to exercise its right under the policy to correct the alleged title defect. Commonwealth asked the trial court to find that it had fully complied with its policy obligations.

WBI filed a counterclaim against Commonwealth on September 16, 2011, and joined Mr. Navaretta and his law firm as counterclaim defendants. WBI's Third Amended Counterclaim included three counts against Commonwealth for breach of fiduciary duty and constructive fraud as closing agent and breach of contract for the title commitment; three counts against Mr. Navaretta for legal malpractice, fraud, and constructive fraud in his capacity as WBI's attorney; and two counts against the law firm for constructive fraud and breach of fiduciary duty in its role as closing agent. Mr. Navaretta, his law firm, and Commonwealth pleaded an affirmative defense that the statutes of limitations barred WBI's claims.

Absent tolling of the statute of limitations, WBI had two years from the October 2004 closing to sue Mr. Navaretta. See § 95.11(4)(a), Fla. Stat. (2004) (two-year limitation for professional malpractice, whether based on contract or tort). For the constructive fraud and breach-of-fiduciary-duty claims against the law firm and Commonwealth, WBI should have sued by 2008. See §§ 95.11(3)(j),(o) (four-year limitations). For the breach-of-contract claim against Commonwealth, WBI should have sued by 2009. See § 95.11(2)(b) (five-year limitation). WBI waited too long; it filed its counterclaim in September 2011.

Mr. Navaretta, his law firm, and Commonwealth moved for summary judgment, asserting that WBI's claims were time-barred. They argued that WBI knew or

should have known by February 2005, when Mr. Navaretta sent WBI the closing documents, and certainly no later than March 2006, when WBI referred to the property in the mortgage as twenty "condominium units," that it had not purchased unencumbered raw land. Even if WBI were deemed not to have known until March 2006, an outer limit of five years for Commonwealth's alleged breach of contract would have been March 2011, months before WBI filed its counterclaim.

WBI maintains that the statutes of limitations were tolled because Mr. Navaretta fraudulently concealed the fact that WBI was buying condominium units rather than unencumbered raw land. WBI claims not to have discovered the problem until nearly six years after the 2004 closing. According to WBI, Mr. Navaretta failed to provide WBI a copy of the original title commitment for review prior to closing. WBI insists that it did not have sufficient time or opportunity to review the closing documents closely. WBI allegedly relied on Mr. Navaretta's statement that the documents were proper and signed specific places indicated in the documents as advised.

WBI argues that Mr. Navaretta knew before and during the closing that WBI would not have closed had it been aware that the purchase did not include the land. WBI argues that Mr. Navaretta made a conscious decision to conceal the facts because he wanted to get paid for legal and title work. WBI contends that its claim is supported by the facts that Mr. Navaretta did not use the purchase and sale agreement's legal description in the title and closing documents and that he improperly corrected and rerecorded the legal description in the deed after the closing. Unfortunately, WBI confuses fraud and fraudulent concealment.

Our record contains no evidence that WBI told Mr. Navaretta that it planned to use the property for anything other than condominiums. Doug East, WBI's agent and contact person with Mr. Navaretta, testified that he could not recall whether WBI asked Mr. Navaretta to clarify the nature of the interest WBI was purchasing. Mr. East only "glanced at" the contract before signing it but did not pay attention to the property description until later.

After the hearing, the trial court granted summary judgment and entered final judgments in favor of Mr. Navaretta, his law firm, and Commonwealth because WBI's claims were time-barred. On appeal, WBI argues that it did not know nor should it have known that the land itself was not included. WBI argues that summary judgment was improper because a material issue of fact remains as to when the statutes of limitations began to run.

The statute of limitations for fraud begins to run when the plaintiff should have discovered, exercising any diligence, that the allegedly fraudulent transaction was suspect. Breitz v. Lykes-Pasco Packing Co., 561 So. 2d 1204, 1205 (Fla. 2d DCA 1990). Fraudulent concealment is markedly distinct; it focuses on subsequent actions to keep the improper conduct shrouded from sight. "Generally, two elements are required before the equitable principle of fraudulent concealment will be utilized to toll the statute of limitations, to-wit: plaintiff must show both successful concealment of the cause of action and fraudulent means to [achieve] that concealment." Nardone v. Reynolds, 333 So. 2d 25, 37 (Fla. 1976), superseded by statute, ch. 75-9, § 7, at 20-21, Laws of Fla., on other grounds as stated in Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So. 2d 201, 207 (Fla. 2003), receded from on other grounds by

<u>Hearndon v. Graham</u>, 767 So. 2d 1179, 1184-85 (Fla. 2000). Even if WBI was unaware, or could not have been aware through the exercise of reasonable diligence, that the property was encumbered by a condominium declaration when it bought the parcels, there is no evidence of fraudulent concealment after the closing. To the contrary, Mr. Navaretta sent all the closing documents to WBI. And, certainly by 2006, WBI's own mortgage documents made clear that it did not own raw unencumbered land. Where there was no active concealment and a party with the exercise of due diligence could have discovered the facts, the statute of limitations is not tolled. <u>Jackson v. Georgopolous</u>, 552 So. 2d 215, 216 (Fla. 2d DCA 1989). Accordingly, we affirm the final summary judgments based upon the expiration of the statutes of limitations. We affirm on all other issues without further discussion.

Affirmed.


CRENSHAW and SLEET, JJ., Concur.