SALTER, J.
The trustee, his son, and their law firm appeal an adverse final judgment against them in an action brought by the beneficiaries of family trusts. After an eight-day trial, the probate division of the circuit court: removed the trustee, finding that he had breached his fiduciary duties to the beneficiaries; found that the trustee and his son also acted in a dual capacity as attorneys for the trusts, and participated in breaches of fiduciary duty in that capacity as well; surcharged the trustee, his son, and their law firm for $2,146,812.00 in expenses incurred as a result of their undervaluation of trust property; found that the legal fees paid to the law firm by the trustee were substantially unreasonable and unsupported by the evidence at trial; and required disgorgement of approximately $1,348,000.00 in trustee’s and attorney’s fees previously paid. With prejudgment interest, the total amounts awarded the beneficiaries exceeded $5,300,000.00. We affirm the final judgment in all respects.
I. Facts and Proceedings Below
A. The Trust and the Lynnfield Property
Arthur F. McCormick,[1] an attorney, prepared the last will and testament, as well as a revocable family trust agreement, for his friend of many years, Robert Cox. Cox passed away in January 2001, leaving his wife as the lifetime beneficiary of the “Robert W. Cox Family Trust,” and Mrs. Cox’s four children as the primary beneficiaries of the companion “Robert W. Cox Bypass Trust.” Under the terms of the trust agreement, McCormick became the trustee of each of the trusts when Cox died.
*983 The Cox trusts owned a single asset — a property of approximately 100 acres in Lynnfield, Massachusetts, then operated as a nine-hole golf course. In early 2002, McCormick arranged for an appraisal of the property “as of’ the date Cox passed away. In a report to the trustee dated March 6, 2002, the appraiser reported a fair market value of the property, as an operating golf course and at the date of death, of $2,500,000.00. A month later, that value was used on the federal estate tax return filed on behalf of Cox.
The evidence at trial was in sharp contrast regarding that value and the trustee’s reasons for adopting it. An October 2001 billing entry on an MM&M invoice to the trusts indicated that McCormick was contacting professionals in Massachusetts regarding the development of the golf course property. An invoice for MM&M legal services to the estate, dated March 1, 2002, reported time expended on December 17, 2001, in a search for “the lawfirm [sic] that successfully challenged the City in having its land rezoned for condo development.” Another entry, for December 27, 2001, reported time for a letter to the CPA who ultimately prepared the estate tax return “regarding tax consequences of high vs. low appraisal of golf course.” Other evidence suggested that the golf course could have a much higher market value, even “as of’ the date of Cox’s death, because of its suitability for residential development.
The trustee’s appraiser’s March 2002 report stated that “the highest and best use of the subject property would be for residential development to the maximum intensity [sic] that the physical characteristics of the site would allow.” Yet the evidence did not reflect any concerted effort by McCormick as trustee or by the appraiser (before that appraisal was prepared and the estate tax return filed) to ascertain a market value of the property if developed in accordance with its maximum allowable residential density. Nor did McCormick promptly alert the beneficiaries to the prospect that the property might have a much greater value, or that the estate tax return might be amended to reflect such a value.
In May 2002, if not before, it became clear that the Town of Lynnfield had a strong interest in developing the property as affordable housing, and that the value of the Cox parcel for that purpose was several multiples of its value as a golf course. At trial, the trust beneficiaries’ appraiser testified that the fair market value based on “highest and best use” of the property at the time of Cox’s death was $10,500,000.00. The property was sold to the Town in 2005 for $12,000,000.00.
In order to avoid an immediate and adverse capital gain tax to the family trust and beneficiaries, the trustee structured a like-kind exchange under section 1031 of the Internal Revenue Code, acquiring a qualifying shopping center in Collier County, Florida, with part of the proceeds realized from the sale of the golf course to the Town of Lynnfield. While it is undisputed that the beneficiaries and their counsel supported the like-kind exchange versus the alternative of an immediate recognition and payment of capital gain taxes, there is no evidence that the beneficiaries waived claims against the trustee for undervaluing the Lynnfield property for estate tax purposes. It is also undisputed, and the trial court found, that the trusts incurred $2,146,812 in professional and other expenses (exclusive of the trustee’s own claims for fees) in order to consummate the section 1031 transaction and thereby defer the capital gain taxes on the sale of the property.
B. Untimely and Inaccurate Accounts
McCormick did not provide a trust accounting report to the beneficiaries of ei *984 ther trust until April 2005, when he provided reports from January 25, 2001, through December 31, 2004. McCormick’s testimony regarding this significant breach of obligation[2] was that he felt he should save the trust the expense of such accountings until “all of a sudden it looked like it was going to turn out to look like there was going to be something substantial.” This would suggest that he did not discover the real value of the Lynnfield property until early 2005, a suggestion contradicted by his own billings, correspondence, consultations with development professionals in Massachusetts, retention of a broker to sell the property for the trusts, and pleadings in the later lawsuit.
Moreover, the untimely April 2005 “accounting” for four years of activity by McCormick reported “assets on hand” as of December 31, 2004, as a total of $2,580,113.51, using the long-outdated golf course value. By June 2003, McCormick had authorized the Massachusetts real estate broker to list and sell the property for $15,400,000.00. By September 2003, McCormick and the broker were reviewing offers ranging from $10,868,400.00 to $15,000,000.00. In his April 2005 letter to the beneficiaries enclosing the belated ac-countings, McCormick disclosed the existence of the $12,000,000.00 contract with Lynnfield, but he justified the lower carrying value because of his assessment that a greater value “could only be obtained by changing the permissible use that is more economically productive.”
McCormick’s explanation for his failure to account is also contradicted by his and his own law firm’s initial counterclaims in the circuit court proceeding. McCormick and MM&M alleged (as a basis for computing attorney’s fees for the trusts):
3. ARTHUR F. McCORMICK, as Trustee, through extraordinary skill and effort during the summer of 2002, realized that the Golf Course was not the highest and best use of the subject property. He also ascertained in the summer of 2002 that the highest and best use of the subject property was a site for the construction of low income housing.
[[Image here]]
7. ARTHUR F. McCORMICK, as Trustee, submits the property attained its value of Twelve Million ($12,000,000.00) Dollars, plus tax benefits (rollback of real estate taxes of approximately $382,123.00 and savings of documentary stamps of approximately $54,760.00), during the calendar year 2002 and that the Trustee’s fees for the Trust should be determined using that valuation for the years 2002, 2003, 2004 and 2005.
[[Image here]]
15. The Trust corpus attained a value of approximately Twelve Million ($12,000,000.00) Dollars as soon as ARTHUR F. McCORMICK, as Trustee, ascertained the highest and best use for the property and proceeded with his plan, which eventually led to the successful purchase by the City of Lynn-field of the property for Twelve Million ($12,000,000.00) Dollars.
16. The Firm submits that the property attained its value of Twelve Million ($12,000,000.00) Dollars during the calendar year 2002 and that the attorney’s fees for the Trust should be determined *985 using that valuation for the years 2002, 2003, 2004 and 2005.
(Emphasis added).
McCormick and MM&M amended paragraphs seven, fifteen, and sixteen of their counterclaims seven months later to allege instead that the property attained its value of $12,000,000.00 “upon the signing of a contract for the property by the City of Lynnfield” for that amount (i.e., in early 2005 rather than “during the calendar year 2002”).

C.Unilateral and Undisclosed Trustee’s Fees

When the sale of the property closed in August 2005, McCormick instructed the closing agent to make separate distributions to the trusts totaling over $1,548,000, before the remaining net sales proceeds were separately remitted to the qualified seller’s trust intermediary for the section 1031 exchange. McCormick’s testimony and notes established that these funds were diverted from the proceeds without clearance from the beneficiaries, much less any court order, primarily to fund “trustee’s fees” totaling $1,217,528 in four payments from September 2005 through December 2005.[3] When professionals retained by the beneficiaries realized that the net proceeds were substantially less than anticipated, they began a journey of discovery that culminated in learning of the “trustee’s fees” and commencing the circuit court adversary proceeding.

D.Attorney’s Fees

The beneficiaries’ second amended complaint also sought a disgorgement of $74,327.62 in attorney’s fees paid by McCormick as trustee to his firm, MM&M, from 2001-04. At trial, none of the attorneys from MM&M, including McCormick, testified regarding the firm’s legal services, value, or benefits. The trial court concluded after trial that the law firm had participated in McCormick’s breaches of duty, such that the legal fees paid were to be refunded to the trusts.

E.The Beneficiaries’ Claims

The beneficiaries commenced their lawsuit against McCormick, McCormick IY, and MM&M[4] in January 2006. The beneficiaries sought and obtained a temporary injunction prohibiting the defendants from making payments (other than ordinary operating expenses) or encumbering assets. The second amended complaint ultimately included seven counts demanding: (1) a statutory review of trustee’s fees taken or claimed; (2) a review of the trustee’s attorney’s fees taken or claimed; (3) a distribution to Cox’s widow as income beneficiary of the trusts; (4) a surcharge against the trustee and MM&M for breach of fiduciary duties; (5) resolution of the beneficiaries’ objections to the 2005 accountings; and (6) and (7) removal of the trustee and successor trustees.
The case was tried over eight days in November 2011. On March 7, 2012, the trial court entered a final judgment granting relief to the beneficiaries under each count and awarding money damages (including prejudgment interest) totaling approximately $5,300,000.00 as against *986 McCormick, McCormick IV, and MM&M, in varying amounts. A motion for rehearing was denied the following month, and this appeal ensued.
II. Analysis
Appellate counsel for McCormick, McCormick IV, and MM&M, who were not trial counsel, raise four primary issues on appeal: (1) that the beneficiaries failed to prove a breach of duty and resulting damages; (2) that the defendants are entitled to a new trial based on the erroneous admission of the expert valuation testimony of the beneficiaries’ appraiser; (3) that the trial court abused its discretion by requiring the disgorgement of the trustee’s and attorney’s fees paid to the defendants; and (4) that the trial court abused its discretion by removing the trustee “and ignoring the trust’s succession framework.” We examine these in turn.
A. Breach of Fiduciary Duty and Damages
The beneficiaries introduced competent substantial evidence of breaches of fiduciary duty by McCormick, McCormick IV, and MM&M, and resulting damage, thus entitling them to an affirmance on those claims. CFI Sales & Mktg. Ltd. v. Fla. Marlins Baseball, Ltd., 837 So.2d 423 (Fla. 3d DCA 2002).
The beneficiaries called an experienced trust and probate attorney regarding the trustee’s duty to diligently ascertain the value of the sole asset of the trusts, the Lynnfield property. That witness also opined that it would be a breach of duty to undervalue the property for federal estate tax purposes. The beneficiaries’ expert appraisal witness testified that the market value of the property at the time of Cox’s death in 2001 was $8,000,000.00 more than the value accepted by McCormick without a more diligent inquiry.
And as noted earlier, McCormick and his law firm initially alleged in their counterclaims that McCormick should have received credit in 2002 for recognizing the true development capacity of the property and its ultimate sale for $12,000,000.00. McCormick could have amended, but did not amend, the estate tax return to report the higher value. The 1031 like-kind exchange transaction and the associated expenses of $2,146,812.00 were shown to have been necessitated by the undervaluation.
The trustee and his law firm also breached their duties to post a bond and to render annual accountings to the beneficiaries as specified by the Cox trust agreement and Florida law. Section 4.1.4 of the trust agreement specified that individuals named as trustees “shall be required to post bond in.an amount equal to the value of the assets held in trust.” Section 737.304, Florida Statutes (2001), allowed the trustee to apply to a court to excuse the trust instrument’s requirement for a bond, but McCormick did not seek that relief. McCormick’s decision not to file a bond (to save money, according to McCormick) was one which should have been cleared by the beneficiaries in writing or submitted to the court for consideration. A bond allows collection of losses imper-missibly incurred by a fiduciary from a solvent, court-approved surety. On the present record, and in the absence of a bond, the beneficiaries must pursue collection remedies (of as-yet unknown efficacy) against the defendants/appellants, with no apparent recourse to a surety.
McCormick conceded that he filed no annual accounting until the four-year report in April 2005. A fiduciary is obligated not only to make prudent decisions, but also to file the annual account-ings to keep the beneficiaries informed of income, expenses, and fluctuations in value of the trust assets. Each beneficiary had *987 an enforceable right to receive an accounting from the trustee. Weiss v. Courshon, 618 So.2d 255 (Fla. 3d DCA 1993); §§ 737.303, .3035, Fla. Stat. (2002).
And though this is discussed in greater detail under the disgorgement issue below, a trustee’s unilateral payment to himself of a seven-figure fee from trust monies — without prior disclosures of alleged entitlement and amount to the beneficiaries or the court — also constituted a flagrant breach of duty. Lees v. Pierce, 648 So.2d 839 (Fla. 5th DCA 1995). Once the trustee paid the section 1031 like-kind exchange costs, invested in the shopping center property, and paid himself over $1,200,000.00 in “trustee’s fees,” the trusts’ cash and cash-equivalent assets were severely depleted. The evidence at trial demonstrated that the family trust was unable to pay Mr. Cox’s widow all of the principal, some $873,000.00, that she was entitled to receive under the trust agreement, without incurring substantial capital gains taxes.

B.Admission of Expert Appraisal Testimony

The beneficiaries’ expert appraiser had a Harvard undergraduate degree, a Master’s Degree in Business Administration from Babson College, and a Massachusetts certified general appraiser’s license. Trial counsel for the defendants did not request a voir dire on those qualifications, or object to the appraiser’s valuation testimony as he provided it. After cross-examination, the defendants moved to strike the appraisal testimony. The trial court stated its belief that the defendants’ points went “to weight and not admissibility,” and thus allowed the testimony. “We review discretionary issues involving the admission of evidence ... for abuse of discretion.” H & H Elec., Inc. v. Lopez, 967 So.2d 345, 347 (Fla. 3d DCA 2007). We find no abuse of discretion in the trial court’s refusal to strike the appraiser’s testimony.
C. Disgorgement of Trustee’s and Attorney’s Fees
When the beneficiaries learned of the extraordinary and unilateral trustee’s fees paid by McCormick to himself from the sale of the Lynnfield property in 2005, they and their professionals immediately demanded information and the legal basis for the payments. Remarkably, McCormick did not immediately restore the payments (or any part of them) to the trusts pending a resolution of the matter or the submission of the claim for trustee’s fees to the court. Nor did McCormick place the funds (or any part of them) in a separate account or segregate them until the court considered the matter. McCormick simply retained the funds and waited for the beneficiaries to come after him in their lawsuit. The trial court had the power to review the evidence regarding the trustee’s administration of the trusts and to determine an appropriate trustee’s fee, including no fee at all. § 736.1001(2)(h), Fla. Stat. (2013) (authorizing the court to “reduce or deny compensation to the trustee” to remedy a breach of trust); Ortmann v. Bell, 100 So.3d 38, 45 (Fla. 2d DCA 2011).
The trial court’s assessment of the beneficiaries’ claims for the disallowance of attorney’s fees paid to MM&M is also affirmed. Among other factors supporting that ruling, none of the MM&M attorneys testified regarding the specific legal services each provided or the other factors set forth in Florida Patient’s Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985).
D. Removal of Trustees
On this record, it is apparent that the trial court did not abuse its discretion in removing McCormick as trustee, and in granting the beneficiaries’ preemptive request to preclude McCormick’s sons *988 from serving as a successor trustee. In the absence of such a ruling, McCormick IV and Brad McCormick (in that order) would have succeeded McCormick under Article IV of the trust agreement (as to both the family trust and the bypass trust). Count VII of the second amended complaint essentially sought a declaration that McCormick IV and Brad McCormick should be disqualified from the otherwise self-executing succession provisions because of their participation with their father in MM&M and their knowledge of, or acquiescence in, the breaches of duty at issue in the lawsuit. The court’s power to remove a trustee and to appoint a special trustee is well settled. §§ 736.0706, .1001(2)(g), Fla. Stat. (2013).
III. Conclusion
The final judgment in favor of the beneficiaries is supported by competent substantial evidence and is affirmed in all respects.

. The appellants are Arthur F. McCormick (“McCormick”); his son and law partner Arthur F. McCormick, IV ("McCormick IV”); and their law firm, McCormick, McCormick & McCormick, P.A. ("MM&M”).

. Although the specific language changed during some of the years at issue here (compare § 733.303(4), Fla. Stat. (2000), with §§ 733.303(4), .3035, Fla. Stat. (2002)), the annual accounting should have informed the beneficiaries of the trustee's upwardly-moving assessment of the Lynnfield property’s market value from year to year. Section 4.1.5 of the Cox trust agreement also requires such an accounting.

. McCormick's notes dated a few weeks before the closing indicated that he considered his efforts responsible for the increase in value from $2,500,000.00 to $12,000,000.00, such that he should be entitled to ten percent of the increase. This amount was the largest component of the fees he paid himself as trustee. He also paid himself fees in connection with the acquisition of the like-kind section 1031 exchange property at the end of 2005. McCormick also paid himself $55,954.70 in "regular” trustee’s fees during the period 2001-03.

. Brad McCormick, initially named as a defendant, obtained a dismissal from the lawsuit before trial and is not a party here.