# Third District Court of Appeal

## State of Florida

Opinion filed September 1, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-2514
Lower Tribunal No. 11-755
_____

**Brian Giller,**
Appellant,

vs.

**Anita Grossman, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Rosa C. Figarola, Judge.

Law Offices of Andrew B. Peretz, P.A., and Andrew B. Peretz (Fort Lauderdale), for appellant.

Jason B. Giller, P.A., and Jason B. Giller and Hilary Schein, for appellees Jamie Giller and Jason Giller; Berger Singerman LLP, and James D. Gassenheimer and Christina M. Perry, for appellee, Anita Grossman.

Before HENDON, GORDO, and BOKOR, JJ.

HENDON, J.

Brian Giller appeals from a December 2019 Final Judgment. We affirm.

Facts

This proceeding is the most recent in a long line of cases related to Brian Giller's ("Brian" or "Appellant") disputes with his siblings, Anita Grossman ("Anita" or "Appellee") and Ira Giller ("Ira"), over the administration of the estate of their father, Norman M. Giller. The subject litigation has been going on, in various forms, for the past seven years.[1] While Norman Giller was alive, he created seven trust instruments to hold beneficial interest in various real estate holdings and other family assets.  Pursuant to the trusts' terms, Brian, Anita, and Ira were each allocated one-third of the assets and accumulated income.  Anita and Ira received their one-third allocations outright. Brian had financial difficulties and, after consulting with his father, Norman, Brian elected to place his one-third trust allocation into separate

---

[1] Previous cases in this Court between these siblings include: Giller v. Giller, 2021 WL 3072914 (Fla. 3d DCA July 21, 2021); Giller v. Giller, 319 So. 3d 690 (Fla. 3d DCA 2021) (3D20-565); Giller v. Grossman, 300 So. 3d 1169 (Fla. 3d DCA 2019) (3D19-1829); Giller v. Giller, 291 So. 3d 948 (Fla. 3d DCA 2019) (3D18-2573); Giller v. Grossman, 250 So. 3d 664 (Fla. 3d DCA 2018) (3D17–2393);  Giller Grp., Ltd. v. Giller, 197 So. 3d 1241, 1242 (Fla. 3d DCA 2016) (3D14–1386, 3D14–2592);  Giller v. Grossman, No. 3D15-2930, 2016 WL 2731504 (Fla. 3d DCA Feb. 29, 2016) (3D15–2930); Giller v. Giller, 173 So. 3d 1051 (Fla. 3d DCA 2015) (3D14–2639); Giller v. Giller Grp. Ltd., 162 So. 3d 1015 (Fla. 3d DCA 2014) (3D14–0910).

subtrusts attached to the seven primary trusts as a means of protecting his share of trust assets from creditors. These subtrusts continue to hold and manage Brian's one-third allocated share. Other than the subtrust to the Giller Family Trust, the subtrusts provide that Brian and his two now-adult children, Jamie Giller and Jason Giller ("issue"), are equal beneficiaries. In the Giller Family Trust,[2] Brian is the primary beneficiary, and his children are remaindermen. Norman appointed Anita as Trustee of the seven trusts, with Brian's agreement. At some point, with Norman's approval, Brian borrowed money from one of the family businesses and agreed to repay the loan. As it became obvious over time that Brian would never repay the loan, family relationships deteriorated.

Brian began to request distributions from the subtrusts in 2005. Anita would always discuss Brian's requests with their father, Norman. After Anita made a needs assessment, she would then issue modest checks to Brian. In April 2008, Anita's husband became critically ill, and although she wrote approximately eight small checks as Trustee to Brian that year, she did so without conducting any needs assessments.

---

[2] The Giller Family Trust generates only enough income to cover routine administrative expenses and leaves a nominal amount for distribution.

In 2009, and after Norman passed away, Brian requested all the accumulated income in the subtrusts. Anita conferred with the attorney who drafted the subtrust documents. He advised her that because Brian was not the sole beneficiary of six of the seven subtrusts, she would be in breach of her fiduciary duties as Trustee if she granted Brian's request and distributed all the principal to him. In late 2009, Brian demanded all of the income-generating assets of the subtrusts as well as the accumulated income. Anita refused his demand. Subsequently, the board of the Giller family company, from which Brian had borrowed money, sued him to recover the loan balance.

In March 2011, Brian filed a fifteen-count complaint to, among other things, remove Anita as Trustee, and for breach of trust, civil theft, etc. His third amended complaint was filed February 26, 2013. Counts I through VII sought declaratory judgment as to the meaning of the subtrusts' language. Brian disputed Anita's interpretation of certain trust language that includes his children as beneficiaries, claiming the language of the subtrusts shows it was intended to benefit him solely, not his children. The trial court concluded that the language in the subtrusts is not ambiguous and set the remaining

issues for trial, leading to the trial court's final judgment which determined the remaining six counts in Brian's third amended complaint.[3]

In its final judgment, the court made findings of fact and conclusions of law regarding each of Brian's claims. The court found the trust document language unambiguous, found no conflict of interest, and no breach of trust by Anita as Trustee.

Standard of Review

We review de novo a trial court's construction of trust provisions, as well as its interpretation or application of controlling statutes, common law rules, or other legal principles. Demircan v. Mikhaylov, 306 So. 3d 142, 145 (Fla. 3d DCA 2020); Brigham v. Brigham, 11 So. 3d 374, 381-82 (Fla. 3d DCA 2009) (reviewing de novo interpretation, application and misapplication of trust statutes, other controlling Florida law, and trust provisions).

A trial court's decision whether to remove a trustee or to order a trustee to take certain actions is reviewed by an appellate court for abuse of

---

[3] Brian's remaining claims against Anita included 1) failing to act impartially and favoring the interests of Brian's children over Brian; 2) refusing to make distributions to Brian without determining his needs; 3) acting arbitrarily and capriciously with regard to distributions; 4) failing to provide Brian with accountings of the subject trusts; 5) conflicting and adverse interests to Brian in the two legal proceedings against him to recover loan amounts; and 6) conflict regarding Anita's role as property manager of the two Giller properties that generate income.

discretion. <u>Wallace v. Comprehensive Pers. Care Servs., Inc.</u>, 306 So. 3d 207, 210 (Fla. 3d DCA 2020) (citing §§ 736.0706, 736.1001, and 736.0201, Fla. Stats.; <u>McCormick v. Cox</u>, 118 So. 3d 980, 988 (Fla. 3d DCA 2013) ("The court's power to remove a trustee and to appoint a special trustee is well settled."); <u>Aiello v. Hyland</u>, 793 So. 2d 1150, 1151 (Fla. 4th DCA 2001) ("Section 737.201(1)(a) [now § 736.0202, Fla. Stat.] unequivocally confers upon this Court the discretion and authority to remove a trustee where appropriate.")).

Appellate courts review an order of involuntary dismissal de novo, "viewing all of the evidence presented and all available inferences from that evidence in the light most favorable to the non-moving party." <u>HSBC Bank USA v. Fla. Kalanit 770 LLC</u>, 299 So. 3d 450, 452 (Fla. 3d DCA 2020).

Discussion

Brian raises four issues on appeal. We address them in turn.

Brian's first two issues are related. He argues that the trial court should have ruled the subtrust language ambiguous and required introduction of extrinsic evidence regarding whether his children were intended beneficiaries. He argues that the trial court should have then reformed the language to conform to his own interpretation that subtrust property was to

6

be allocated solely for his benefit, to the exclusion of his children. We disagree.

Six of the seven subtrusts contain the following identical and dispositive language, in pertinent part:

> Any share established under this paragraph 2 for BRIAN J. GILLER shall be held as a separate trust for the benefit of BRIAN J. GILLER and administered and disposed of as follows:
>
> (a) the Trustee may distribute <u>to or for the benefit</u> of such beneficiary <u>or his issue</u> (whether equal or unequal, and whether the whole or a lesser amount) <u>so much of the net income</u> of such beneficiary's separate trust as the Trustee, <u>in the Trustee's discretion</u>, deems necessary for such beneficiary's reasonable health, support, maintenance or education of such beneficiary or for the reasonable health, support, maintenance . . . <u>or</u> for the reasonable health, support, maintenance or education <u>of any issue of such beneficiary</u> . . . In determining the amount to be distributed, the Trustee <u>may, but need not</u> consider any income or resources of such beneficiary or his issue.
>
> (b) The Trustee shall have the power and authority, at any time and from time, to time, in the Trustee's discretion, to make a payment or payments out of the principal of such beneficiary's separate trust of any amount as the Trustee, <u>in the Trustee's discretion</u>, deems necessary for the reasonable health, support, maintenance or education of such beneficiary <u>or</u> for the reasonable support, maintenance or education <u>of any issue of such beneficiary</u>. In making such invasions of principal the Trustee <u>may, but need not</u>, consider any other income of such beneficiary or his issue.

(emphasis added).

The subtrust language clearly sets forth Norman Giller's intent to include Brian's children. See Bryan v. Dethlefs, 959 So. 2d 314, 317 (Fla. 3d DCA 2007) ("The polestar of trust or will interpretation is the settlor's intent.") (citing Arellano v. Bisson, 847 So. 2d 998 (Fla. 3d DCA 2003); Phillips v. Estate of Holzmann, 740 So. 2d 1, 2 (Fla. 3d DCA 1998)). Intent is ascertained from the four corners of the instrument by considering all the provisions in context, rather than from individual, select portions or forms of words. Id. at 317. The meaning applied to those provisions, words, or phrases cannot lead to absurd results. Roberts v. Sarros, 920 So. 2d 193, 196 (Fla. 2d DCA 2006). Construing the subtrusts in their entirety, the phrase "for the benefit of" does not render the subtrusts ambiguous as a matter of law with respect to the inclusion of Brian's children as beneficiaries.

Further, in order for the trial court to reform a trust instrument, there must be clear and convincing evidence that the trust, as written, does not reflect the settlor's intent. See Schroeder v. Gebhart, 825 So. 2d 442, 446 (Fla. 5th DCA 2002); Reid v. Est. of Sonder, 63 So. 3d 7, 10 (Fla. 3d DCA 2011). Here, the record reflects that Norman created the subtrusts to protect Brian's share from his creditors; reformation of the trust language to eliminate any mention of Brian's "issue" would go against Norman's intent as

8

the one who created and oversaw the trusts for Brian's debt management benefit.

Next, Brian argues that the trial court erred by granting Anita's motion to involuntarily dismiss count XI, in which Brian sought monetary damages against the Trustee for breach of duty for unjustly failing to make distributions of net income from the trusts. The trial court dismissed count XI for failure to prove any damages and refused to extrapolate from past distributions or find that the cessation of distributions constituted breach of duty. Brian contends he was not required to prove damages because section 738.1001, Florida Statutes, provides for non-monetary relief. While it is correct that this statute provides for nonmonetary remedies, Brian, however, sought only monetary damages in count XI. Viewing the evidence presented and all available inferences from that evidence in the light most favorable to the non-moving party, HSBC, 299 So. 3d at 452, we conclude the trial court correctly dismissed count XI.

Brian next argues that the trial court erred by failing to remove Anita as Trustee for breach of her fiduciary duties and for conflict of interest. Brian argues that Anita's service as president of one of the family companies[4] and

---

[4] Despite demand, Brian did not repay the GGL Loan prior to Norman's death. The GGL Action was initiated to recoup the principal and interest

9

her status as co-personal representative of Norman's estate compromised her ability to serve as independent fiduciary of the trusts. There is no indication in the record of conflict of interest as a result of Anita's several roles within the family businesses; the record indicates that Anita has not taken any salary or remuneration for her work as Trustee. The court stated:

> Section 736.0706(1)(a), Fla. Stat. provides that a trustee may be removed under four circumstances. The Petitioner alleged two grounds in support of the Trustee's removal: "the trustee has committed a serious breach of trust" and "[d]ue to the unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries."

> The Court finds that there is no evidentiary support for Petitioner's allegations of breach of trust. Moreover, the Court finds that Anita Grossman acted prudently, in conformity with her duties of care as Trustee under the Florida Trust Code and that she has taken great efforts to safeguard the assets of the Subject Trusts and navigate an acrimonious situation for the benefit of all the beneficiaries. Ms. Grossman has never paid herself or taken a fee for her administration of the Subject Trusts despite what is clearly a time consuming and difficult situation.

We find no abuse of discretion in the trial court's conclusion.

Finally, Brian seeks to vacate the trial court's award of attorney's fees and costs to Anita. His argument that the Trustee should not be permitted to pay her attorney's fees and costs from the subtrust assets is without merit.

---

value of the GGL Loan on behalf of the entity; Anita was not a party to that action.

Section 736.0802(10)(b), Florida Statutes (2020), states, in pertinent part: "If a trustee incurs attorney fees or costs in connection with a claim or defense of a breach of trust which is made in a filed pleading, the trustee may pay such attorney fees or costs from trust assets without the approval of any person and without any court authorization."

For the reasons set forth above, we affirm.