DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SUZANNE REVAH,**
Appellant,

v.

**CECILE REVAH,** individually and as Successor Trustee of **THE SALOMON REVAH REVOCABLE TRUST DATED DECEMBER 9, 1999,** and as Trustee of **THE SUZANNE REVAH REVOCABLE TRUST DATED DECEMBER 9, 1999,**
Appellee.

No. 4D2024-1992

[November 12, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 502022CP004158.

Robert J. Hauser of Sniffen & Spellman, P.A., West Palm Beach, for appellant.

John J. Shahady of Shahady & Wurtenberger P.A., Fort Lauderdale, and Samantha Tesser Haimo of Feigeles & Haimo LLP, Fort Lauderdale, for appellee.

GROSS, J.

This case involves an unhappy family dynamic involving a mother who has sued her daughter over the daughter's performance as the trustee of trusts where the mother was the beneficiary. The case is an object lesson that loose, informal recordkeeping common to family finances is contrary to the requirements imposed on trustees by Florida statutes.

With the exception of a single count, we reverse the final judgments and orders entered in favor of the daughter and remand for further proceedings consistent with this opinion.

### *Background Facts*

This case arises from a dispute between Suzanne Revah, a trust beneficiary who was around 90 years old when the litigation began in

2022, and one of her children, Cecile Revah, concerning actions Cecile had taken during her tenure as trustee of two trusts.

Suzanne's husband, Salomon Revah, died in April 2012. His estate was administered in Palm Beach County. According to the petition for administration, his estate's assets consisted of two parcels of real property, having a total value of $714,000. His pour-over will directed that his estate assets be transferred to his trust (the "Salomon Trust"). The two properties were the only assets in his probate estate.

Cecile became the successor trustee of the Salomon Trust upon her father's death. The Salomon Trust's two parcels were both sold—one in 2014 and the other in 2017.

Meanwhile, in December 2012, Suzanne and Cecile became co-owners of a house in the Woodfield Country Club in Boca Raton (the "Woodfield House"). The purchase price was $510,000 plus settlement charges, and there was no mortgage on the property. The Woodfield House was titled in the names of Suzanne and Cecile as joint tenants with rights of survivorship. The property is worth about $2.2 million today.

At the bench trial in this case, Cecile admitted that she purchased the Woodfield House and then reimbursed herself with funds from the Salomon Trust, which she characterized as "dad's money."

In April 2014, Suzanne executed a quitclaim deed transferring her entire interest in the Woodfield House to Cecile, leaving Cecile as sole owner. Throughout this litigation, Suzanne took the position that she did not understand the significance of this transaction. Suzanne is illiterate and speaks "French, not English."

In February 2021, Cecile executed a deed transferring a 50% interest in the Woodfield House to Suzanne, as Trustee of the Suzanne Revah Revocable Living Trust (the "Suzanne Trust"). The summary judgment record contains no explanation for this transaction.[1]

---

[1] At the bench trial which took place after the order granting her motion for summary judgment, Cecile testified that she made the February 2021 transfer because Suzanne was ill with Covid-19 and Cecile wanted to honor a promise that Suzanne's share of the house could pass to her heirs. Cecile explained, "So that's why I transferred it back to her, because I made her that promise, but not because she was entitled to it." Cecile testified that her agreement with Suzanne was that "anything that I paid [on behalf of Suzanne], I would be able to get it back from the value of the house."

2

Just prior to Cecile's resignation as trustee of the Suzanne Trust in January 2022, Suzanne asked Cecile for an accounting. Cecile refused in no uncertain terms. This chain of events, including Suzanne learning that her name was not on the title to her own home, led Suzanne to suspect that Cecile had mismanaged trust assets of both trusts. Suzanne attested in her affidavit that Cecile "did not keep accurate accounting records, and reconstructed accounting records many years after the fact . . . ."

Suzanne's affidavit stated that the Woodfield House had "never belonged to Cecile" and that "Cecile's name should have never been on the title, at least not for any permanent purposes." When asked at a deposition about the joint titling of the Woodfield House, Suzanne testified that this was done behind her back. Suzanne further testified that Cecile put herself on the title to the house without Suzanne's knowledge. Suzanne elaborated that Cecile put "half of the house under her name and . . . half of the house under my name. For what? I didn't know about that."[2]

### *Suzanne's Complaint*

In August 2022, Suzanne filed a complaint against Cecile, asserting four counts: (I) a claim for trust accounting; (II) a claim for damages arising under accounting, which sought damages "to the extent of any defalcations or breaches of fiduciary duty arising out of such accounting (and any objections to the accounting)"; (III) a claim for removal of Cecile as trustee of the Salomon Trust and the Suzanne Trust; and (IV) a claim for imposition of a constructive trust over Cecile's interest in the Woodfield House on the grounds of undue influence and abuse of fiduciary duties.

The trial court granted Cecile's motion to dismiss Count II without prejudice, ruling that Suzanne "may move to amend at a later date if damages can be alleged with more specificity."

---

[2] Especially when viewed in the light most favorable to Suzanne, the record contains much that demonstrates Suzanne's concern that the house had been placed in Cecile's name alone. At one point, Suzanne questioned, "Why did she put 50 percent in her name? For what reason? The house was paid for in cash in my name. For what reason did she do this?" Suzanne added: "But she shouldn't have that 50 percent. Never." Suzanne reiterated that she "never asked [Cecile] to put the house in her name. This was done behind my back." Suzanne also remarked: "This is not normal."

### Cecile's Answer, Affirmative Defenses, and Counterclaim and Suzanne's Reply

Cecile filed an answer, affirmative defenses, and counterclaim.

In her operative counterclaim, Cecile sued for unjust enrichment and partition of the Woodfield House. Cecile alleged that Suzanne had been unjustly enriched because Cecile had spent over $900,000 on behalf of Suzanne or the property. Cecile alleged that "it was the intent that Cecile own the Property as a 50% owner to secure all payments made on Suzanne's behalf and to maintain the Property." Based on her allegations that she was a 50% owner of the Woodfield House and that she was entitled to credit for payments she made toward the purchase or maintenance of the property, Cecile brought a partition claim to declare the parties' interests in the property and to order its sale.

In her amended affirmative defenses, Cecile contended that "Suzanne's claims are barred by the applicable statute of limitations and laches," arguing that "any and all claims relating to alleged improper ownership, undue influence, fraud, or breach of fiduciary duty, accrued in or around 2012 or, at the latest, April 2014, when the property was transferred to Cecile's name only."

Suzanne's reply to Cecile's affirmative defenses asserted that Cecile's fraudulent conduct tolled the running of the statute of limitations.

### Summary Judgment Proceedings

Cecile moved for summary judgment on Suzanne's Counts I, III, and IV. Cecile argued that the constructive trust claim was barred by the four-year statute of limitations, and that the public recording of the deeds in 2012 and 2014 precluded any claim of fraudulent concealment. Regarding the accounting claim, Cecile asserted that she had "provided accountings for all assets of her parents that she had knowledge of in mid-2022" when she produced thousands of pages of documents to Suzanne's counsel. Finally, Cecile argued that "Count III is moot under the terms of the Suzanne Trust as Suzanne can remove Cecile as trustee at any time."

Forty days before the summary judgment hearing, Cecile filed three bank account ledgers that she characterized as "accountings" related to the "only bank trust accounts at issue in this case." Each of the ledgers begins in either 2014 or 2015 and shows deposits and withdrawals from the account.

As to the accounting claim, Suzanne's response to the motion for summary judgment argued that "trustees are required to give annual accountings" under section 736.08135, Florida Statutes, which requires a "reasonably understandable report." Instead, Suzanne contended that Cecile had never prepared an accounting and had provided a "virtual records dump" in this case, which was "anything but a 'reasonably understandable report.'" Suzanne maintained that she "was never kept informed of her financial situation."

As to the constructive trust claim, Suzanne argued that the statute of limitations was tolled due to fraudulent concealment, as she was "kept in the dark about the ownership of [the Woodfield] property until questions began to arise concerning" Cecile's management of trust assets. Suzanne claimed that she "had no idea that Cecile owned part of the property in 2012," and that she was "horrified" to learn that she had held no ownership interest in her home for seven years.

Suzanne also filed an electronic "dropbox" link to a report from her forensic CPA. Based on that report, Suzanne argued that Cecile had made "extravagant payments to family members," disbursed funds to herself, and conveyed "to herself interests in [Suzanne's] property."

Shortly before the summary judgment hearing, Cecile filed a reply that included the new argument that Suzanne's accounting claim was barred by statutory laches under *Corya v. Sanders*, 155 So. 3d 1279 (Fla. 4th DCA 2015). In *Corya*, this court held: "We thus conclude, on the facts of this case, that statutory laches under section 95.11(6) limits the right to an accounting, where no accounting has been done, to no more than four years before filing an action for an accounting against the trustee of an irrevocable trust." *Id.* at 1286.

### *Order Granting Summary Judgment*

The trial court entered an order granting summary judgment in Cecile's favor.

Based upon *Corya*, the court ruled that "Suzanne's claim for accounting must be limited to the period no earlier than four years prior to filing her Complaint (i.e., August 5, 2018)." The court found that "the documents presented in support of summary judgment demonstrate that Cecile accounted for the Salomon Trust assets," adding that Suzanne had "failed to demonstrate that these accountings do not conform to Section 736.08135, Florida Statutes."

5

As to the claim for removal of Cecile as trustee, the trial court ruled that Count III was "moot under the terms of the Suzanne Trust as Suzanne can remove Cecile as trustee at any time without Court intervention."

As to the claim for a constructive trust, the trial court ruled that Count IV was time barred because Cecile's alleged actions in convincing Suzanne to execute the April 2014 quitclaim deed "took place over nine (9) years ago and are beyond the four-year statute of limitations for both fraud and breach of fiduciary duty." In response to Suzanne's argument that she did not know title to the Woodfield House had been taken out of her 50% interest and put in Cecile's name only, the court ruled that "said information was public record as of April 2014, and, nonetheless, the deed was changed back to 50% ownership in February 2021," such that "the ownership of the Property is currently the same as it was when the Property was first purchased in 2012 . . . ."

The trial court rejected Suzanne's fraudulent concealment argument, ruling that "[n]o evidence was presented to demonstrate that Cecile fraudulently concealed anything from Suzanne." The court emphasized that "[t]he public record made clear that Cecile and Suzanne were co-owners of the subject Property in 2012, the ownership was changed to Cecile, only, in 2014, and by 2021, ownership returned" to both women.

Suzanne filed a detailed motion for rehearing that the trial court denied.

### *Denial of Leave to Amend and Ruling in Limine*

In March 2024, about three months after the summary judgment order, Suzanne moved for leave to amend her complaint to add claims for conversion and breach of fiduciary duty. Suzanne sought to amend based upon newly discovered evidence that "was discovered by way of the forensic accounting commissioned in this litigation." Suzanne alleged that the amendment was not futile, that the privilege to amend had not been abused, and that neither party would suffer any undue prejudice.

The proposed conversion count alleged that between 2011 and 2022, Cecile converted to her own use over $431,000 of trust assets. The proposed count for breach of fiduciary duty concerned payments Cecile made to a contractor.

Cecile opposed the motion for leave to amend, arguing that Suzanne's "initial claims were already denied by summary judgment and any alleged 'new' claims are based on the same facts and circumstances as initially

raised which would be subject to the same statute of limitations (which was the basis of granting summary judgment)."

The trial court denied Suzanne's motion for leave to amend.

The trial court granted Cecile's motion in limine, which had sought to prohibit evidence relating to Suzanne's claims in her initial complaint and any new claims in her motion for leave to amend. The court thus excluded most of the anticipated testimony of Suzanne's forensic CPA.

### *Bench Trial*

Cecile's counterclaims for unjust enrichment and partition proceeded to a two-day bench trial in late May 2024. The trial court admitted numerous exhibits, including Cecile's records supporting her claimed expenditures. At trial, Cecile testified that Suzanne had orally agreed to reimburse her for all expenditures and that Suzanne reiterated this agreement in 2021. Cecile denied that she was "looking to double-dip."

Cecile also offered excerpts from Suzanne's two depositions that were favorable to Cecile's position at trial.

### *The Final Judgment*

Based on the evidence presented, the court found that Cecile was owed $975,776.57 from Suzanne, with $588,142.56 relating to the Woodfield House and $387,634.01 relating to personal expenses incurred by Cecile for Suzanne's benefit. The court found that Suzanne's affirmative defenses based on the statute of limitations and laches failed with respect to Cecile's claims for partition and unjust enrichment. The court ruled that Cecile was entitled to judgment in her favor for $387,634.01 on her claim for unjust enrichment, plus prejudgment interest of $175,632.90 and $1,782.50 for a prior sanctions order, for a grand total of $564,849.41.

As to the count for partition, the court determined that Cecile was entitled to a credit against Suzanne's equity for the $588,142.56 in expenses Cecile contributed to the property. However, the court also ruled that Suzanne was entitled to a credit for the purchase price of the property in the amount of $579,902.66. Accordingly, the court ordered the sale of the property, with the proceeds distributed in the following order of priority: (1) brokerage fees; (2) Cecile's attorney's fees; (3) Cecile's $588,142.56 credit and Suzanne's $579,902.66 credit; and (4) any remaining funds being divided equally between the parties. This split of

proceeds does not account for Cecile's separate unjust enrichment judgment of $564,849.41.

### *The Trial Court Erred in Granting Summary Judgment on Suzanne's Accounting Claim Because Cecile Failed to Meet Her Burden of Proving that She Had Served Statutorily-Compliant Accountings*

Suzanne challenges the trial court's grant of summary judgment on her accounting claim. We reverse that portion of the summary judgment order because Cecile failed to meet her burden of showing that her disclosures in this case complied with the applicable provisions of the Florida Statutes.

An order granting summary judgment is reviewed de novo. *Gromann v. Avatar Prop. & Cas. Ins. Co.*, 345 So. 3d 298, 300 (Fla. 4th DCA 2022). Florida's summary judgment rule, which is to be applied in accordance with the federal standard, states that summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). A party seeking summary judgment "always bears the initial responsibility" of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under Florida law, a trustee of an irrevocable trust has a statutory duty to "provide a trust accounting . . . to each qualified beneficiary at least annually and on termination of the trust or on change of the trustee." § 736.0813(1)(d), Fla. Stat. (2022).[3]

Chapter 736 does not permit a trust accounting to be an instrument of obfuscation. "A trust accounting must be a reasonably understandable report from the date of the last accounting or, if none, from the date on which the trustee became accountable, that adequately discloses the information required in subsection (2)." § 736.08135(1), Fla. Stat. (2022).

The statute describes the required contents of an accounting, including: (a) a statement identifying the trust, the trustee furnishing the accounting, and the time period covered; (b) a report of all cash and property transactions, significant administrative transactions, and

---

[3] Although we are citing the 2022 version of the statute, we recognize that the duty to provide an accounting had spanned multiple years.

8

receipts and disbursements; (c) identification and valuation of trust assets on hand at the close of the period, including acquisition and estimated current values; (d) disclosure of significant non-financial transactions; (e) allocation details of income and principal affecting any beneficiary's interest; and (f) a plan of distribution for any undistributed assets in the final accounting.  § 736.08135(2), Fla. Stat. (2022).

"A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust."  § 736.1001(1), Fla. Stat. (2022).  "A fiduciary is obligated not only to make prudent decisions, but also to file the annual accountings to keep the beneficiaries informed of income, expenses, and fluctuations in value of the trust assets."  *McCormick v. Cox*, 118 So. 3d 980, 986 (Fla. 3d DCA 2013).  A beneficiary has "an enforceable right to receive an accounting from the trustee."  *Id.* at 986–87.

Given these statutory requirements, a trustee's failure to prepare an accounting is itself a breach of fiduciary duty.  *See Corya*, 155 So. 3d at 1285 (noting that a trustee's "[f]ailure to prepare an accounting is a . . . breach of fiduciary duty," and is "the equivalent of at least a negligent tort, and, under certain facts . . . an intentional tort") (citing *McCormick*, 118 So. 3d at 986–87).  "The breach may result in an award of damages against the trustee personally."  *Id.* (citing §§ 736.1002(1), 736.1013(2), Fla. Stat. (2008)).

Under Florida law, the burden is on fiduciaries to adequately account for their use of a beneficiary's funds.  *Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc.*, No. 6:07-CV-1091-ORL19GJK, 2009 WL 320855, at *10 (M.D. Fla. Feb. 9, 2009).  It is clear that "[t]he burden of accounting for trust assets . . . is on the trustee."  George G. Bogert et al., *Bogert's The Law of Trusts and Trustees* § 961 (May 2025 updated).

The trial court erred in granting summary judgment on Suzanne's accounting claim because Cecile failed to meet her burden of establishing that she had served statutorily compliant accountings.  Suzanne made a prima facie case that Cecile was a trustee, and that Suzanne did not receive accountings.  At that point, the ultimate burden of proof rested with Cecile to account for the property held by her in trust consistent with Chapter 736.

Viewed in the light most favorable to Suzanne, the record shows that Cecile failed to serve any statutorily compliant accountings as required by Chapter 736.  The only documents Cecile produced were (1) a 2022 "document dump" of third-party financial records and (2) unsworn ledgers filed on October 5, 2023, which was over a year after litigation commenced.

These documents lack the essential elements of a statutory accounting under section 736.08135, as they are not "reasonably understandable" reports and do not include the information required by section 736.08135(2). In addition to not being organized in a report format, the documents were not provided annually as required.

Nonetheless, the trial court granted summary judgment in Cecile's favor, improperly shifting the burden to Suzanne—a 90-something year old woman who lacks English proficiency and cannot read—to prove that no proper accountings were served. This shifting of the burden was error.

The trial court improperly relied on the unsworn, post-litigation ledgers as satisfying Cecile's statutory duty. Mere bank statements or transaction logs do not constitute a statutory accounting. The absence of sufficient annual accountings for over a decade establishes a per se breach of trust under section 736.1001(1), Florida Statutes.

Accordingly, the trial court erred in granting summary judgment on the accounting claim. Cecile failed to meet her burden of proving that she served accountings in compliance with 736.08135, and at minimum, a genuine issue of material fact exists as to whether she fulfilled her statutory duty. Even under Cecile's own cited case law, Suzanne had the right to seek accountings going back to at least 2018.

### Suzanne Failed to Preserve Her Argument that There is No Statutory Laches to Demand Accountings, But She Should be Granted Leave to Amend her Pleadings to Raise that Argument on Remand

"In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005) (quoting *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985)). Moreover, a failure to object to a procedural irregularity in the summary judgment proceedings waives the issue. *Wong v. Crown Equip. Corp.*, 676 So. 2d 981, 982 (Fla. 3d DCA 1996).

Suzanne failed to preserve her argument that statutory laches does not apply to her accounting claim. Although Cecile improperly raised the statutory laches issue for the first time in a reply memorandum filed seven days before the summary judgment hearing, Suzanne did not object to this procedural irregularity. More importantly, Suzanne offered no substantive argument below as to why the *Corya* limitations period did not apply to

the accounting claim. Therefore, Suzanne failed to preserve her challenge to the application of statutory laches to her accounting claim, and we cannot reverse on this ground.

Although this issue was not preserved, we are compelled to reverse for other reasons. On remand, therefore, Suzanne shall be given leave to amend her pleadings to raise the issue of whether the legislature abrogated *Corya* by amending section 736.1008, Florida Statutes, in 2018. *See* Ch. 2018-35, § 8, Laws of Fla.

### *The Trial Court Erred in Granting Summary Judgment on Suzanne's Constructive Trust Claim as Issues of Fact Remained*

Chapter 736 provides the legal framework for a beneficiary to challenge self-dealing by a trustee. A "transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction" unless, among other things, the transaction was authorized by the trust's terms or approved by the court. § 736.0802(2), Fla. Stat. (2012).

A constructive trust is an appropriate remedy for a trustee's breach of fiduciary duty toward a beneficiary. *See Williams v. Stanford*, 977 So. 2d 722, 730 (Fla. 1st DCA 2008) (noting that "[a] constructive trust is an equitable remedy available in cases dealing with breaches of fiduciary duty"). A party may establish a constructive trust as an independent cause of action by showing: "(1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment." *Brown v. Regan*, 368 So. 3d 3, 4 (Fla. 4th DCA 2023). Another method of establishing a constructive trust is to "prove an independent cause of action that would support a constructive trust as a remedy, such as unjust enrichment resulting from fraud, undue influence, or breaches of fiduciary duty." *Id.* (internal quotation marks omitted).

A "breach of fiduciary duty is an intentional tort subject to a four-year statute of limitations." *Patten v. Winderman*, 965 So. 2d 1222, 1224 n.1 (Fla. 4th DCA 2007). "An action for the declaration of a constructive trust may be barred if the events giving rise to the necessity for the imposition of this equitable remedy transpired beyond the period permitted by the applicable statute of limitations, usually expressed in terms of laches." *Palmland Villas I Condo. Ass'n v. Taylor*, 390 So. 2d 123, 125 (Fla. 4th DCA 1980). Under section 95.11(6), Florida Statutes (2022), "[l]aches shall bar

any action unless it is commenced within the time provided for legal actions concerning the same subject matter regardless of lack of knowledge by the person sought to be held liable . . . ."

For the equitable principle of fraudulent concealment to toll the statute of limitations, the "plaintiff must show both successful concealment of the cause of action and fraudulent means to [achieve] that concealment." *W. Brook Isles Partner's 1, LLC v. Commonwealth Land Title Ins. Co.*, 163 So. 3d 635, 639 (Fla. 2d DCA 2015) (citation and internal quotation marks omitted).

But fraudulent concealment is easier to establish in the context of a fiduciary relationship that exists between a trustee and a beneficiary. "A fiduciary's deliberate withholding of material information the fiduciary has a duty to disclose constitutes fraudulent concealment." *First Union Nat'l Bank v. Turney*, 824 So. 2d 172, 190 (Fla. 1st DCA 2001). At common law, "[w]here the trustee by fraud or deception, *or even by keeping quiet when he should speak and account to his cestui,* causes the cestui to be ignorant of the rights of the cestui and of the duties of the trustee, laches will not be imputed to the cestui until discovery of the true condition." *Sewell v. Sewell Props.*, 30 So. 2d 361, 362–63 (Fla. 1947) (emphasis added).

Florida's Trust Code contains specific provisions addressing limitations on proceedings against trustees, which are similar to the common law rule. *See* § 736.1008, Fla. Stat. (2022).

Even before the 2018 statutory change to section 736.1008, this court held that statutory laches did not bar an action alleging a breach of fiduciary duty against a trustee for removing trust assets where the beneficiary timely filed suit after receiving an accounting. *See Woodward v. Woodward*, 192 So. 3d 528, 531 (Fla. 4th DCA 2016). The four-year statute of limitations for breach of trust "does not begin to run until a beneficiary receives an adequate trust disclosure document issued by the trustee."[4] *Id.* (citing § 736.1008(1)(a), Fla. Stat. (2012)). When a trustee has not adequately disclosed a matter and has not issued a final trust accounting, "a claim against the trustee for breach of trust does not begin to accrue until the beneficiary has actual knowledge of the 'facts upon which the claim is based if such actual knowledge is established by clear and convincing evidence.'" *Id.* (quoting § 736.1008(3), Fla. Stat. (2012)).

---

[4] By contrast, "[w]hen a matter is adequately disclosed in a trust disclosure document, a beneficiary must bring an action against a trustee for breach of trust within six months after receipt." *Woodward*, 192 So. 3d at 531 (citing § 736.1008(2), Fla. Stat. (2012)).

Thus, in *Woodward*, we held that the trial court erred in applying laches to claim for breach of fiduciary duty against a trustee for removing trust assets, as the limitations period did not begin to run until the trustee provided an accounting. *Id.* at 531–32.

Here, the trial court erred in granting Cecile's motion for summary judgment on Suzanne's constructive trust claim. In the light most favorable to Suzanne, the evidence showed that Cecile, as trustee of the Salomon Trust, effectively used trust assets to purchase the Woodfield House in 2012 and then added her own name to the title as a joint tenant. The property was acquired with trust assets that were to be used for Suzanne's benefit, yet Cecile made herself a co-owner of the property. This self-dealing transaction was voidable under the Trust Code because it was neither authorized by the trust instrument nor approved by any court. A claim for constructive trust to restore ownership of the property to Suzanne was proper as a remedy for this breach of trust.

Cecile's argument that the constructive trust claim was time barred fails because the limitations period did not begin to run until Suzanne had actual knowledge of the facts, established by clear and convincing evidence. § 736.1008(3), Fla. Stat.; *Woodward*, 192 So. 3d at 531. Viewed in the light most favorable to Suzanne as the non-moving party, the evidence showed that Suzanne, who was elderly, illiterate, and entirely dependent on Cecile for financial and legal matters, was unaware of the 2012 titling transaction until shortly before this litigation commenced.

The trial court also incorrectly concluded that Cecile overcame Suzanne's "fraudulent concealment" avoidance. Cecile, as trustee, had a duty to disclose the titling and retitling of the property that was purchased with trust assets. Viewed in the light most favorable to Suzanne, the evidence of Cecile's deliberate withholding of material information regarding the titling of the property—information Cecile had a duty to disclose as the trustee—constitutes fraudulent concealment.

For similar reasons, the trial court's reliance on public records is misplaced in the context of a trustee's obligations to a beneficiary under Chapter 736. The public recording of the deeds in 2012 and 2014 could not have commenced the running of any limitations period. Constructive notice through public records was insufficient to establish the "actual knowledge" required by Chapter 736.[5]

---

[5] We also reject the argument that Suzanne's answer to Cecile's counterclaim necessarily admitted Suzanne's actual knowledge of the 2012 titling transaction.

### *The Remaining Issues*

We affirm the trial court's summary judgment on Count III as Suzanne has not demonstrated error.

We reverse the final judgment on Cecile's counterclaims for partition and unjust enrichment because the bench trial was impacted by the erroneous summary judgment favoring Cecile. The erroneous summary judgment on Suzanne's claim for a constructive trust could have affected the outcome of Cecile's counterclaim for partition. If Suzanne were to prevail on her claim that Cecile had improperly titled the property to herself as a joint owner in 2012, then this alleged self-dealing transaction would be voidable. As such, Cecile would not be a legitimate titleholder to the property and thus would not have standing to assert a partition claim. *See Dietrich v. Winters*, 798 So. 2d 864, 866 (Fla. 4th DCA 2001) (stating that to maintain a claim for partition, "the plaintiff must show title or a right to partition," and "[w]here title is not established in the plaintiff, partition is not available even if the plaintiff might have an equitable interest in the land"). The trial court's erroneous conclusion that Suzanne's claim for a constructive trust was time barred was also harmful error with respect to Cecile's counterclaim for partition. *See Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1256 (Fla. 2014) ("To test for harmless error, the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict.").

The trial court's financial award to Cecile was also the product of error because the court disallowed Suzanne's damage claims and excluded Suzanne's forensic CPA's report about Cecile's alleged defalcation of trust funds. The error was not harmless because the case turned on Cecile's credibility as a trustee, which the trial court failed to fully scrutinize, thus depriving Suzanne of a fair trial on transactions between the parties dating back to 2012.

Finally, on remand, Suzanne should be given leave to file an amended complaint. The denial of leave to amend was premised on the erroneous summary judgment rather than an exercise of the court's discretion. The

---

The admitted allegation at issue was written in the passive voice and was too ambiguous to support the conclusion that Suzanne had contemporaneous actual knowledge of how the property was titled. Suzanne may have admitted the allegation because it accurately described *Cecile's reason* for arranging to have the property titled jointly.

complaint had not previously been amended, so it cannot be said that the privilege to amend had been abused.

*Affirmed in part, reversed in part, and remanded.*

SHEPHERD and SHAW, JJ., concur.

*      *      *

**Not final until disposition of timely-filed motion for rehearing.**